UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEWART M. SMITH,

Plaintiff-Appellant,

Write the full name of each plaintiff.

_____CV_____
(Include case number if one has been
assigned)

-against-

AECOM TISHMAN,
TISHMAN CONSTRUCTION CORPORATION,

ROBERT HOLT (a.k.a. Robert Randolph Holt, Randy Holt),
MARK ANTHONY FLEMING,

HAROLD BLAKE,
      Defendants-Appellees.

Write the full name of each defendant. The names listed
above must be identical to those contained in Section I.

Do you want a jury trial?

☒ Yes   ☐ No

## EMPLOYMENT DISCRIMINATION COMPLAINT

### NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

## I.     PARTIES

### A.  Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

| STEWART | M | SMITH |
|---|---|---|
| First Name | Middle Initial | Last Name |

| P.O. Box 100954 | | |
|---|---|---|
| Street Address | | |

| Arlington | VIRGINIA | 22210 |
|---|---|---|
| County, City | State | Zip Code |

| 703-975-5670 | BobSegerROCKGOD@Outlook.com |
|---|---|
| Telephone Number | Email Address (if available) |

### B.  Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. (Proper defendants under employment discrimination statutes are usually employers, labor organizations, or employment agencies.) Attach additional pages if needed.

Defendant 1:

| AECOM TISHMAN | | |
|---|---|---|
| Name | | |
| 100 Park Avenue, | | |
| Address where defendant may be served | | |
| New York | NEW YORK | 10017 |
| County, City | State | Zip Code |

Defendant 2:

| TISHMAN CONSTRUCTION CORPORATION | | |
|---|---|---|
| Name | | |
| 100 Park Avenue, 18th Floor | | |
| Address where defendant may be served | | |
| New York | NEW YORK | 10017 |
| County, City | State | Zip Code |

STEWART M. SMITH  *-vs.* AECOM TISHMAN        Page 2 Supplemental

## I. PARTIES

### A. Plaintiff Information

STEWART M. SMITH

P.O. Box 100954

Arlington, VA  22210

(T) 703-975-5670

BobSegerROCKGOD@Outlook.com


### B. Defendant Information

To the best of your ability, provide addresses where each defendant may be served.  If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption.  (Proper defendants under employment discrimination statutes are usually employers, labor organizations, or employment agencies.)  Attach additional pages, if needed.

**Defendant 1**:

AECOM TISHMAN

100 Park Avenue,

New York, NY  10017


**Defendant 2**:

TISHMAN CONSTRUCTION CORPORATION

Corporate Headquarters

100 Park Avenue, 18th Floor

New York, NY  10017


**Defendant 3**:

ROBERT HOLT (a.k.a. Robert Randolph Holt, Randy Holt)

Vice President/Operations Manager at AECOM


Wake Forest, NC  27587

Case 1:21-cv-02915-PGG-SDA    Document 1    Filed 04/03/21    Page 4 of 48

STEWART M. SMITH  -vs. AECOM TISHMAN          Page 2 Supplemental

Robert.Holt@aecom.com


**Defendant 4**:

MARK ANTHONY FLEMING

Site Security Manager

2618 Horseshoe Bend

Deer Park, TX  77536

(T) 281-506-2678

Mark.Fleming1@aecom.com  |  MarkFleming82@gmail.com


**Defendant 5**:

HAROLD BLAKE



(T) 910-676-4028

JAILHOWSROC@GMAIL.COM

Defendant 3:

ROBERT HOLT (a.k.a. Robert Randolph Holt, Randy Holt)
_____
Name

_____
Address where defendant may be served

| Wake Forest | NORTH CAROLINA | 27587 |
|---|---|---|
| County, City | State | Zip Code |

## II.   PLACE OF EMPLOYMENT

The address at which I was employed or sought employment by the defendant(s) is:

Guantanamo Bay Naval Base
_____
Name

P.O. Box 100954
_____
Address

| FPO | AE | 09593-0001 |
|---|---|---|
| County, City | State | Zip Code |

## III.   CAUSE OF ACTION

### A.  Federal Claims

This employment discrimination lawsuit is brought under (check only the options below that apply in your case):

☐ **Title VII of the Civil Rights Act of 1964**, 42 U.S.C. §§ 2000e to 2000e-17, for employment discrimination on the basis of race, color, religion, sex, or national origin

   The defendant discriminated against me because of my (check only those that apply and explain):

   ☐   race: _____

   ☐   color: _____

   ☐   religion: _____

   ☐   sex: _____

   ☐   national origin: _____

☐ **42 U.S.C. § 1981**, for intentional employment discrimination on the basis of race

   My race is: _____

☒ **Age Discrimination in Employment Act of 1967**, 29 U.S.C. §§ 621 to 634, for employment discrimination on the basis of age (40 or older)

   I was born in the year: **1969**

☒ **Rehabilitation Act of 1973**, 29 U.S.C. §§ 701 to 796, for employment discrimination on the basis of a disability by an employer that constitutes a program or activity receiving federal financial assistance

   My disability or perceived disability is: Chronic Kidney Dysfunction

☒ **Americans with Disabilities Act of 1990**, 42 U.S.C. §§ 12101 to 12213, for employment discrimination on the basis of a disability

   My disability or perceived disability is: Chronic Kidney Dysfunction

☐ **Family and Medical Leave Act of 1993**, 29 U.S.C. §§ 2601 to 2654, for employment discrimination on the basis of leave for qualified medical or family reasons

## B.  Other Claims

In addition to my federal claims listed above, I assert claims under:

☒ **New York State Human Rights Law**, N.Y. Exec. Law §§ 290 to 297, for employment discrimination on the basis of age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status

☒ **New York City Human Rights Law**, N.Y. City Admin. Code §§ 8-101 to 131, for employment discrimination on the basis of actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation, alienage, citizenship status

☒ Other (may include other relevant federal, state, city, or county law):

Under the Trafficking Victims Protection Act of 2000, 22 U.S.C. § 7102, N.Y. Penal Law § 135.35 (PL) and N.Y. Penal Law § 230.34.  BREACH OF CONTRACT, NY UCC § 2-205 (2016) Section 2--205.

## IV.   STATEMENT OF CLAIM

### A.  Adverse Employment Action

The defendant or defendants in this case took the following adverse employment actions against me (check only those that apply):

- ☐ did not hire me
- ☒ terminated my employment
- ☒ did not promote me
- ☒ did not accommodate my disability
- ☐ provided me with terms and conditions of employment different from those of similar employees
- ☒ retaliated against me
- ☐ harassed me or created a hostile work environment
- ☐ other (specify): _____

_____

### B.  Facts

State here the facts that support your claim. Attach additional pages if needed. You should explain what actions defendants took (or failed to take) *because of* your protected characteristic, such as your race, disability, age, or religion. Include times and locations, if possible. State whether defendants are continuing to commit these acts against you.

_____

_____

_____

_____

_____

_____

_____

As additional support for your claim, you may attach any charge of discrimination that you filed with the U.S. Equal Employment Opportunity Commission, the New York State Division of Human Rights, the New York City Commission on Human Rights, or any other government agency.

## IV. STATEMENT OF CLAIM

### A. Adverse Employment Action

The defendant or defendants in this case took the following adverse employment actions against me (check only those that apply):

### B. Facts

State here the facts that support your claim. Attach additional pages if needed. You should explain what actions defendants took (or failed to take) because of your protected characteristic, such as your race, disability, age, or religion.  Include times and locations, if possible.  State whether defendants are continuing to commit these acts against you.

1  **ALLEGATION 1:**   <u>**Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 to**</u>

2  <u>**634, for employment discrimination on the basis of age (40 or older).**</u>

3  Plaintiff alleges Defendants' construction project with the U.S. Government (USG)

4  located overseas had specifics related to labor or work and workers or laborers, to include a sub-

5  category of specialized personnel.  Typically, project requirements are given by the USG to

6  prospective contract bidders during the initial bid process.  More refined, exact specifications are

7  defined by the USG after the bid has closed and the contract has been awarded.  Nearly all of the

8  project's requirements and subsequent specifications are unknown to prospective applicants and

9  new hires.  In this particular employment hiring process, project information was disclosure not

10  until arrival overseas with the particular exception of contents of a mutually agreed upon

11  contract. The Defendants' project's labor requirements included non-laborer, specialized

12  personnel to which the Plaintiff was uniquely hired; attached; and, retained.  The job description

13  and corresponding particulars for these specialized personnel were created and advertised by the

14  Defendants specifically for this project.  Defendants' job requirements included construction

15  experience and extensive exposure to similar projects along with applicable USG certifications.

16  Plaintiff was solicited by the Defendants prior to, including social media and personal e-mails as

17  well as upon advertisement of the job announcement.  Plaintiff's credentials were initially

18  received via the job announcement's instructions; superficially accepted internally by the

19   Defendants; and, forwarded to te Defendants for final review and acceptance.  Plaintiff was hired

20   by the Defendants due to his unique qualifications, *see exhibits 01, 02.*

21          The initial overseas deployment of specialized personnel, to which the Plaintiff was

22   attached were all persons over forty years in age.  The initial deployment occurred with two

23   separate waves of personnel -Plaintiff being attached solely to the second wave.  One of the

24   initial specialized personnel departed within several weeks of arrival.  Departure of this

25   individual was two-fold.  First and primarily due to long standing pay disputes of not receiving

26   payment as contractually agreed upon.  Second and subsequent due to indirect and unclear

27   discussion of contract modifications.  Employment dissatisfaction grew for this individual over

28   self-realization that job acceptance was based upon the written job description as well as

29   personal conversations with the Defendants which did not match the then situation.  Location

30   was divulged to each new-hire, including the Plaintiff.  Yet this first separation was due largely

31   because of the expectation of working in an extreme environment, which was not divulged until

32   after arrival as well as frustration over as well as indirect indications that hourly hires on the

33   team would possibly be not be compensated for agreed over-time hours and wages.

34          The project suffered from the perspective of the USG; Defendants' sub-contractor; and

35   the Defendants' remaining specialized team members on location.  Specifically, the Defendants'

36   leadership absences due to vacation and training took a toll on the project and its' speed.

37   Defendants' leadership's prolonged absences followed by the departure of the aforementioned

38   first specialized personnel resulted in the shortage of specialized personnel.  Long repeated

39   promises of additional specialized personnel to the project from the Defendants to the USG and

40   the Defendants' team went unfulfilled.  The result was additional efforts by the Defendants'

41   remaining team members, which the Plaintiff was attached.  Plaintiff was originally personally

2

42    assurd by the Defendants to be outside and exposed to heat "about ten percent of the time."

43    Labor shortages resulted in the Plaintiff being outside and exposed to the Caribbean sun over

44    ninety-five percent of the time.  Specialized personnel was critical to the Defendant' construction

45    project and of paramount concern to agents and representatives of the USG.  Specialized

46    personnel such as the Plaintiff ensured the construction project's overall integrity.

47    Defendants' next project hire to supplement the original departure as well as the project's

48    systematic shortage was an individual local to the base but most specifically someone under forty

49    years of age.  At the time, this new-hire was newly graduated from a local high school; lacked

50    basic construction experience, as self-described and no certifications; and more specifically

51    lacked all of the job description's original prerequisites.  In short, although not qualified by the

52    Defendants' own job announcement requirements and preferences, retention of this first new and

53    young hire meant in the future the Defendants had a pool of local workers to draw from that ere

54    substantially under-skilled and thus cheaper in terms of hourly wages.

55    Plaintiff alleges the Defendants' realization of potentially recruiting from the local

56    population -more specifically young workers and sub-contractors, became increasingly inciting

57    and may have been a major contributing factor in the Plaintiff's separation.  Defendants had

58    originally assured via e-mails and social media the Plaintiff a managerial position similar or even

59    identical to the one vacated due to pay and contract issues.  After the departure of one of the

60    original specialized personnel due to ongoing pay disputes and immediately after the retention of

61    the much younger and vastly inexperienced individual, the Plaintiff's workload; in the field

62    responsibilities; and exposure to the heat and sun increased exponentially.  Plaintiff was

63    ultimately given direction by the much younger new-hire via the Defendants even though the

64    Plaintiff was documented with applicable training, *see exhibits 01, 02.*

STEWART M. SMITH  -vs.  AECOM TISHMAN  Page 5 Supplemental

65    Plaintiff was given notice of separation, effective immediately by the Defendants on

66  January 21, 2019 at 1430 hours, local time.  At the time of separation, the Plaintiff inquired, if

67  the separation was initiated due to or without cause.  To which, there was no response.

68  Additionally, the Plaintiff inquired, if there had been any accusation or incident.  To which, there

69  was no response from the Defendants.  On the day of departure, en route to the airfield, the

70  Plaintiff made similar repeated inquiries of the Defendants to which there was no response.

71    For the allegation of discrimination due to age under Age Discrimination in Employment

72  Act of 1967, 29 U.S.C. §§ 621 to 634, for employment discrimination on the basis of age (40 or

73  older); New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297, for employment

74  discrimination on the basis of age, race, creed, color, national origin, sexual orientation, military

75  status, sex, disability, predisposing genetic characteristics, marital status as well as New York

76  City Human Rights Law, N.Y. City Admin. Code §§ 8-101 to 131, for employment

77  discrimination on the basis of actual or perceived age, race, creed, color, national origin, gender,

78  disability, marital status, partnership status, sexual orientation, alienage, citizenship status, the

79  Plaintiff points to the separation of an additional employee who also was over the age of forty.

80  Corroboration of the Plaintiff's abilities; certifications; performance in the field in the service of

81  the (USG); and, separation of personnel over the age of forty will be via affidavits and

82  testimonies given by several persons, to include Sharon Tobin and Frank Meyer, *see exhibits 04,*

83  *05.*

84

85  **Rehabilitation Act of 1973**, 29 U.S.C. §§ 701 to 796, for employment discrimination on the
86  basis of a disability by an employer that constitutes a program or activity receiving federal
87  financial assistance.

88   **Americans with Disabilities Act of 1990**, 42 U.S.C. §§ 12101 to 12213, for employment
89   discrimination on the basis of a disability.

90

91   Plaintiff has been accepted as a person who qualifies as being considered disabled by the
92   United States Department of Defense (DoD) and thus indicates, identifies on job applications as
93   having or had previously a disability along with a minority status as Native American.
94   Defendants knew of the Plaintiff's disability, to include directly prior to hiring by two very
95   distinct and separate means.  First, the Defendants were informed of the Plaintiff's disability
96   after solicitation of demographical information, to include disability status during the initial
97   application process by which the Plaintiff replied truthfully that he had or has a disability.
98   Second, the Defendants knew firsthand from a long existing personal relationship that the
99   Plaintiff had kidney disease.  Additionally, the Plaintiff has been professionally evaluated to
100  have a disability as well as been medically diagnosed after a documented history of kidney
101  complications.  Plaintiff's condition is a dysfunction as well as is attributed to hereditary,
102  genetics.  Plaintiff's disease was first documented when an acute case manifested in late 2004.
103  In July 2018, the Plaintiff was hospitalized for nearly a week due to complications of severe
104  blood clotting as a result of a kidney procedure.  Plaintiff's medical condition was of obvious
105  great concern to the Plaintiff to the extent that the Plaintiff sought assurances from the
106  Defendants that he would not be exposed to extreme and prolonged high temperatures.
107  Defendants responded with outside work would account for ten percent of the job. Repeated off-
108  line messages captured and retained clearly outline the Plaintiff's concerns emphatically
109  inquiring, if the work to be performed would be inside or outside, i.e., exposed to extreme
110  temperatures as well as the Defendants' assurances the work involved "10% outside."
111  Defendants specifically and uniquely adjusted the Plaintiff's overseas departure date with a two-

112   week extension to accommodate a general medical physical fitness evaluation and proactive

113   kidney exploratory procedure.  Plaintiff arrived overseas on November 9, 2018 approximately

114   two weeks after the original contingency of personnel, *see exhibit 08, 09*.

115       Defendants' prior assurances of  ten percent outside work changed significantly

116   immediately upon arrival to sixty-five or seventy percent initially and ultimately over ninety-five

117   percent exterior work in direct sunlight with extreme humid temperatures greater than 100-

118   degrees for 12 hours each day.  Due to shortages, the Plaintiff rarely had a break after each four

119   hours of consecutive hours of work and often had to forgo lunch.  Environmental conditions and

120   heat exposure increased exponentially after the departure of the first specialized personnel

121   compounded directly by te remaining member's promotion and self-election to remove himself

122   from the field and work-site to the comforts of an air-conditioned construction trailer.

123       On 01-09-19 the new-hire acting as supplementing support was off the entire day.  For

124   this day of 01-09-19, the Plaintiff assumed the new-hire's responsibilities; the Defendants' non-

125   existent leadership responsibilities; and his own responsibilities solely for the entire day.

126   Assuming additional responsibilities and exerting additional efforts was common for the Plaintiff

127   due primarily to labor shortages and non-existent leadership.  Plaintiff was unable to break,

128   including lunch for the entire day of 01-09-19.  The subsequent day of 01-10-19, the Plaintiff

129   was severely ill.  Plaintiff notified via e-mail the Defendants' on-site and off-site hours before

130   the Plaintiff was expected at work, *see exhibit 10, 11*.  Plaintiff was absent on 01-10-19 after

131   giving notice of a medical condition.  01-10-19 was the only day the Plaintiff was ever absent

132   from work.  Plaintiff was never late nor retired early.

133       On the evening of 01-10-19, the Defendant requested and was granted entry into the

134   Plaintiff's company provided lodging.  Defendant inquired as to why the Plaintiff was absent

STEWART M. SMITH -vs- AECOM TISHMAN  Page 5 Supplemental

135 from work as the Plaintiff's absence jeopardized the project, including a likely work-site

136 shutdown.  Plaintiff reiterated that the Plaintiff had been ill, including dehydrated from the

137 previous day.  Plaintiff was interrogated by the Defendant's management for nearly an hour with

138 the intention of shaming and guilting the Plaintiff for being both sick and absent.  Defendant's

139 leadership manipulated in returning to work the next day, which the Plaintiff did.  Plaintiff felt

140 personally overworked to the point of physical and mental exhaustion.  At the same time, the

141 Plaintiff was made to feel guilty for being ill and absent with veiled implications that the

142 Plaintiff's could loss his job.

143        Plaintiff asserts the much younger new-hire never received such treatment, specifically

144 was never visited at her home on 01-09-10 to determine her health status and verify if her

145 absence was justified.  Defendants knew of the Plaintiff's medical condition and concerns about

146 exposure to extreme heat and humidity yet did not allow for breaks due to personnel shortages as

147 well as made veiled references concerning termination if further absences persisted.  Plaintiff felt

148 compelled to continue to work even in extreme environmental conditions and severe pain.

149        On 01-21-19, the Plaintiff was separated by the Defendants.  On 01-22-19, the Plaintiff

150 sought medical attention at U.S. Naval Hospital GTMO, *see exhibit 12, 13.*

151

152

153

154

155

## V.    ADMINISTRATIVE PROCEDURES

For most claims under the federal employment discrimination statutes, before filing a lawsuit, you must first file a charge with the U.S. Equal Employment Opportunity Commission (EEOC) and receive a Notice of Right to Sue.

Did you file a charge of discrimination against the defendant(s) with the EEOC or any other government agency?

⊠  Yes (Please attach a copy of the charge to this complaint.)

When did you file your charge?   02/05/2019 | 1652 hrs to EEOC

☐  No

Have you received a Notice of Right to Sue from the EEOC?

⊠  Yes (Please attach a copy of the Notice of Right to Sue.)

What is the date on the Notice?   January 5, 2021

When did you receive the Notice?   05-Jan-21 | 1630 hrs

☐  No

## VI.    RELIEF

The relief I want the court to order is (check only those that apply):

☐  direct the defendant to hire me

⊠  direct the defendant to re-employ me

⊠  direct the defendant to promote me

☐  direct the defendant to reasonably accommodate my religion

☐  direct the defendant to reasonably accommodate my disability

⊠  direct the defendant to (specify) (if you believe you are entitled to money damages, explain that here)

In addition to equitable remedies, compensatory damages for past and future pecuniary losses and non-pecuniary losses as well as punitive damages to include, but not limited to owed wages, to include earned over-time hours at original contracted rates from arrival date to departure date; lost wages at similar calculation until new employment; lost wages at similar wage calculation until project completion date minus interim wages; expenses incurred, to include subsequent medical procedures related newly formed kidney stones; and, other expenses, including costs authorized by 28 U.S.C. § 1920. 29 C.F.R. § 1614.501(e)(2)(ii)(C).  (See attached).

## VII.   PLAINTIFF'S CERTIFICATION

By signing below, I certify to the best of my knowledge, information, and belief that:
(1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| 04-03-2021 | 4/3/2021 |
| Dated | Plaintiff's Signature |
| STEWART            M | SMITH |
| First Name          Middle Initial | Last Name |
| P.O. Box 100954 | |
| Street Address | |
| Arlington | VIRGINIA            22210 |
| County, City | State            Zip Code |
| 703-975-5670 | BobSegerROCKGOD@Outlook.com |
| Telephone Number | Email Address (if available) |

I have read the attached Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☒ Yes    ☐ No

If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.



**United States District Court**
**Southern District of New York**

# Pro Se (Nonprisoner) Consent to Receive Documents Electronically

Parties who are not represented by an attorney and are not currently incarcerated may choose to receive documents in their cases electronically (by e-mail) instead of by regular mail. Receiving documents by regular mail is still an option, but if you would rather receive them only electronically, you must do the following:

1. Sign up for a PACER login and password by contacting PACER[1] at www.pacer.uscourts.gov or 1-800-676-6856;

2. Complete and sign this form.

If you consent to receive documents electronically, you will receive a Notice of Electronic Filing by e-mail each time a document is filed in your case. After receiving the notice, you are permitted one "free look" at the document by clicking on the hyperlinked document number in the e-mail.[2] Once you click the hyperlink and access the document, you may not be able to access the document for free again. After 15 days, the hyperlink will no longer provide free access. Any time that the hyperlink is accessed after the first "free look" or the 15 days, you will be asked for a PACER login and may be charged to view the document. For this reason, *you should print or save the document during the "free look" to avoid future charges.*

## IMPORTANT NOTICE

Under Rule 5 of the Federal Rules of Civil Procedure, Local Civil Rule 5.2, and the Court's Electronic Case Filing Rules & Instructions, documents may be served by electronic means. If you register for electronic service:

1. You will no longer receive documents in the mail;

2. If you do not view and download your documents during your "free look" and within 15 days of when the court sends the e-mail notice, you will be charged for looking at the documents;

3. This service does *not* allow you to electronically file your documents;

4. It will be your duty to regularly review the docket sheet of the case.[3]

---

[1] Public Access to Court Electronic Records (PACER) (www.pacer.uscourts.gov) is an electronic public access service that allows users to obtain case and docket information from federal appellate, district, and bankruptcy courts, and the PACER Case Locator over the internet.

[2] You must review the Court's actual order, decree, or judgment and not rely on the description in the email notice alone. *See* ECF Rule 4.3

[3] The docket sheet is the official record of all filings in a case. You can view the docket sheet, including images of electronically filed documents, using PACER or you can use one of the public access computers available in the Clerk's Office at the Court.

# CONSENT TO ELECTRONIC SERVICE

I hereby consent to receive electronic service of notices and documents in my case(s) listed below. I affirm that:

1. I have regular access to my e-mail account and to the internet and will check regularly for Notices of Electronic Filing;

2. I have established a PACER account;

3. I understand that electronic service is service under Rule 5 of the Federal Rules of Civil Procedure and Rule 5.2 of the Local Civil Rules, and that I will no longer receive paper copies of case filings, including motions, decisions, orders, and other documents;

4. I will promptly notify the Court if there is any change in my personal data, such as name, address, or e-mail address, or if I wish to cancel this consent to electronic service;

5. I understand that I must regularly review the docket sheet of my case so that I do not miss a filing; and

6. I understand that this consent applies only to the cases listed below and that if I file additional cases in which I would like to receive electronic service of notices of documents, I must file consent forms for those cases.

**Civil case(s) filed in the Southern District of New York:**

**Note:** This consent will apply to all cases that you have filed in this court, so please list all of your pending and terminated cases. For each case, include the case name and docket number (for example, John Doe v. New City, 10-CV-01234).

STEWART M. SMITH v. AECOM TISHMAN

SMITH , STEWART , M
Name (Last, First, MI)

P.O. Box 100954 Arlington          VIRGINIA          22210
Address                City              State              Zip Code

703-975-5670                        BobSegerROCKGOD@Outlook.com
Telephone Number                    E-mail Address

04   /   03   /   2021              X
Date                                Signature

**Return completed form to:**

Pro Se Intake Unit (Room 200)
500 Pearl Street
New York, NY 10007

EEOC Form 161 (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

---

## DISMISSAL AND NOTICE OF RIGHTS

| To: Stewart M. Smith<br>Post Office Box 100954<br>Arlington, VA 22210 | From: New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|

| | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) | |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **520-2019-02560** | **Ashraf Ahmed,**<br>**Investigator** | **(929) 506-5298** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

On behalf of the Commission

*Judith Keenan*

/AA

January 5, 2021

| Enclosures(s) | **Judy A. Keenan,**<br>**District Director** | (Date Issued) |
|---|---|---|

cc:    **Attn**
**Director of Human Resources**
**AECOM-CM**
**100 Park Ave**
**New York, NY 10017**

Enclosure with EEOC
Form 161 (11/2020)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *issued* to you** (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit **before 7/1/10** – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice.** (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

Enclosures(s)

cc:

**MEMORANDUM TO**

U.S. Equal Employment Opportunity Commission

131 M Street, N.E.

Fourth Floor, Suite 4NWO2F

Washington, DC  20507-0100

(T):      800-669-4000

(F):      202-419-0739


AECOM-CM

100 Park Avenue

New York, New York  10017

(T):      646 432 8414


**FROM**

S. Michael SMITH, Complainant

Main Post Office Box 100954

Arlington, Virginia  22201

BobSegerROCKGOD@Outlook.com

(T):      703-975-5670


**NOTICE DATE**        **04-FEB-2019**


**TIMELY REPORTING**        Timely submission from date of termination of **21-JAN-2019**


**SUBJECT**        Employee Employment Termination due to Employer Retaliation


**ALLEGATION 1**        <u>Termination in Retaliation for Employer Breach of Contract</u>

**BASED UPON**        Employer e-mail traffic repeatedly over 8-weeks references Employer switching several Employees from signed contract and Non-Exempt status over to Exempt status due to budgeting constraints

**ALLEGATION 2**            Termination in Retaliation for simple Pay Dispute

**BASED UPON**            Meeting between Employer Management and Executive on 12-JAN-2019
and Employee, Complainant whereby AECOM PM's declaration of, "I'm
here, because you went and spoke to NAVFAC [USG] that you weren't
being paid."


**ALLEGATION 3**            Termination in Retaliation for Whistle Blowing

**BASED UPON**            Meeting on 12-JAN-2019 whereby Employer, AECOM PM declares his
presence is demanded because of internal belief Employee, Complaint
had after weeks of wage non-payment and Employer insistence
Employee Non-Exempt status with overtime pay was too costly gone to
NAVFAC [U.S. Government].  PM is quoted as saying, [t]his is serious; it
could affect our relationship with the Government, which could affect
future contracts with them."


**ALLEGATION 4**            Wrongful Termination of singular day absence by Employee with known
Medical Condition and subsequent Medical Documentation

**BASED UPON**            Employee, Complainant medical call-out on 10-JAN-2019 followed by
only Employer/Employee meeting on 12-JAN-2019 in which Employer,
AECOM's PM made reference to belief of informing the USG that
AECOM may not be in contractual compliance.


**NEXUS**            There is a clear *nexus* between the Employer's unwillingness to honor a
formal, written agreement and contract in existence; in effect and
enforced via Employer's agents' comments and clarifications via e-mails
demonstrated by the Employer's persistence in rejecting Employees'
timesheets with overtime as well as prolonged and under-payment –
AND- the Employee/Complainant's termination on 21-JAN-2019.


**BACKGROUND 1**            Complainant had been an employee of –under contract and provided his
professional services to the Employer, AECOM to support the U.S. Government on a bi-national project in Australia
from 01-SEP-2017 until 27-FEB-2018.   Similar to future employment, both Employer/AECOM and
Employee/Complainant entered into a signed-agreement, which clearly specified Complainant's name; job title; job
functions; duration; location; hourly wage and guaranteed minimum number of hours in the 2017 Australian contract.
Similar to future employment, Complainant was stymied from entering time and attendance timely; delayed in receiving
wages and has never been paid the minimum weekly hours guaranteed as Complainant was underutilized at no fault
of his own and only given (3)-12 hour shifts per week.  Similar to future employment, Complainant never received a

30-60-90 day employee evaluation nor ever received any written warnings or reprimands evident in Complainant's future employment with same company.


BACKGROUND 2                        Based upon obvious acceptable prior employment performance the Complainant was (re)hired by the same Employer, AECOM –but under a different division, AECOM-CS in the fall of 2018.  Prior to deployment to a U.S. naval station, the Complainant requested of his immediate manager a copy of his contract.  Upon receiving and reading the international agreement, the Complainant detected possible issues –namely hours per week and overtime at a rate of 1.5 and made immediate inquiries of his immediate manager.   The Complainant made several key inquiries to his manager who in turn forwarded the issues to the Employer/AECOM's HR Director who in return replied to both the Complainant and his manager.  Based upon repeated and substantive clarification via e-mails by AECOM's HR Director Glassey directly to both employee and management there is cause to believe there was both an agreement and a contract in effect.  Director Glassey affirmed an overtime rate for any hours over (40) in a given week at a rate of 1.5, *see attachments*.

Upon arrival at his duty station, the Complainant was met by his first-line supervisor –all considered employed at an exempt status and a colleague who both commented they were not being paid. Having been through pay disputes previously in Australia, the Complainant elected to remain silent and optimistic.  The Complainant and one colleague went several weeks with multiple weekly timecard rejections by AECOM due to primarily the annotation of overtime primarily and misapplied project codes secondarily.  The Complainant went several weeks without a single paycheck attributed to internal time keeping database issues primarily and the possibly of an issuance of a paper check secondarily.

Around late December 2018 the Complainant made inquiries via e-mail to AECOM's Payroll Department as to the status of missed paychecks.  Upon receiving replies to this inquiry, the Complainant requested via e-mail the status of owed overtime not yet received.  The e-mails received from HR Director Glassey directly reference an Employer initiated switch from Employee Non-Exempt hourly wage earner to Exempt status, which the Complainant reiterated not accepting.  Additionally in e-mail traffic prior to and subsequently after this exchange, the Employer agrees to pay overtime at a straight hourly rate, which confirmed a contract breach.  The straight time-overtime option was repeatedly rejected by the Complainant.

On 12-JAN-2019 the Complainant was summoned by the acting manager to a meeting held between AECOM's A/SSM and PM and the Complainant.  AECOM's A/SSM read a monologue of grievances –all of which were on par with disagreeing with the force used to close a door. In this same meeting, AECOM's PM made the following statements to the Complainant as witnessed by A/SSM Harold Blake, "I'm here because you went to NAVFAC [USG] about not getting paid."  AECOM's Project Manager continued with, "[t]his is a big deal because that can affect our relationship with the Government, which can affect us getting future contracts."  The Complainant was summoned by AECOM's A/SSM Blake on 21-JAN-2019 to meet with SSM Fleming, which was honored.  The Complainant was met by AECOM's SSM and PM and verbally informed AECOM was exercising its' right to terminate employment under the at-will provision.  The Complainant immediately stated the termination was in retaliation for a pay dispute as well as the presumption the Complainant had gone to NAVFAC [USG] to complain.


**FAVORABLE FOR EMPLOYEE**        No 30-60-90 day Employee Evaluation

                                  No Documentation of Oral Warning(s) signed by both parties

No Documentation of Oral Counseling(s) signed by both parties

No Documentation of Written Warning(s) signed by both parties

No Documentation of Written Counseling(s) signed by both parties

(1)  Medically Excused Absence on 10-JAN-2019 by Complainant

(1) Female Co-worker absent on 11-JAN-2019 not Terminated

**TIMELINE**

22-OCT-2018 established Hire Date

09-NOV-2018 arrival at Duty Station

10-JAN-2019 absent from work due to kidney stone

12-JAN-2019 meeting with A/SSM and PM

21-JAN-2019 Termination

25-JAN-2019 departed naval station

**ENCLOSURES**

AECOM International Agreement

**CONTACTS**

**HR Director Susan Glassey**

susan.glassey@aecom.com

(T)      646 432 8414

(C)      845 527 1158

**SSM Mark Fleming**

mark.fleming1@aecom.com   ;   markflemin82@icloud.com

(C)      281-683-2700

**A/SSM Harold Blake**

harold.blake@aecom.com

**RQC Foreman Chris Gonterman**

Christopher.Gonterman@Gmail.com

(T)      904-497-6116

**Frank Meyer**

paratroopas@yahoo.com

(T)      352-613-3741

**Sharon Tobin**

stobin@aha-llc.com

(T)`     612-425-7030

**QC Joseph Iannelli**

(T)      904-497-5497

**CERTIFICATION**

I certify all parties were given copies of this by multiple mediums, including e-mail; fax and certified mailings.

**SIGNATURE**

Stewart M. Smith

**Personal & Confidential**
**International Assignment (Letter/Agreement)**

October 12, 2018



Stewart Smith
Main Post Office PO Box 100954
Arlington, VA 22210
SmithSM4stategov@gmail.com

Dear Stewart,

We are delighted to offer you a temporary international assignment with AECOM. Upon accepting this offer, you'll help us to grow our truly global network of expertise and possibilities. The knowledge and skills of our international teams allow us to create a lasting impact, transform communities and make the world a better place. This is an exciting chance to expand your opportunities and collaborate with skilled colleagues across markets, geographies and disciplines. You'll help solve our clients' most complex and demanding challenges on a global scale.

During this assignment, you will remain an employee of AECOM Construction, Inc. (hereinafter referred to as the Home Entity). This position is contingent upon obtaining the appropriate immigration clearance.  The duration of the assignment will be counted as 'continuous service'.

During your assignment, you will be subject to the direction of the Host Entity senior management and shall not have any authority to negotiate, modify or accept contracts on behalf of Home Entity, to conduct any business in the name of or on behalf of the Home Entity or otherwise to bind the Home Entity to any legal or contractual obligation with any third party.  This does not diminish your rights as authorised signatory of the Home Entity for matters arising in your HOME COUNTRY.

While working for the Host Entity, you shall not, without the prior written consent of the Host Entity, be involved in any other trade, business, occupation, or activity which, in AECOM's judgement, prevents or hinders you from performing your job duties or which directly or indirectly competes with AECOM business or places you in a position of conflict of interest.  At all times you must act in the best interest of AECOM.

**Conditions of Assignment:**

| Assignment Details | Description | Comments |
|---|---|---|
| Home Country: | United States | |
| Host Country: | Cuba | |
| Assignment Job Title: | Site Security Escort | |
| Project Name: | Construct Dining Facility | |
| Project City/Host Country: | Guantanamo Bay Naval Station, Cuba | |
| Estimated Start Date: | October 15, 2018 | * |
| Anticipated Assignment Duration: | 12 months | ** |
| Assignment Family Status: | UNACCOMPANIED | |
| Assignment Type: | LONG TERM | |
| Working Schedule: | 8 hours/5 days a week | *** |
| Observed Public Holiday Schedule: | Host | |
| PTO/Annual or Sick Leave: | Home | |
| Medical/Dental Insurance: | Cigna International | |
| Mobilisation/Demobilisation Flights: | Round Trip Economy Class Direct Route. | |
| Excess Luggage: | 2 excess luggage allowed during mobilization and demobilization | |
| Home Leave: | One round trip, economy class, every four months. | |

\* You agree that your estimated start date may change based on business conditions and/or immigration clearance being in place.

\*\* You agree that business conditions may require AECOM to reduce or extend this period of time. If your assignment is extended, the terms & conditions set forth in this letter will continue to apply unless otherwise amended. The anticipated duration of this assignment does not guarantee employment through any particular date.

\*\*\* Employees are required to follow the work hours in the host country including project need.

| Compensation/Allowance Details | Monthly (USD) | Annual (USD) | Payment Method |
|---|---|---|---|
| Gross Salary (linked home country and subject to AECOM P&R and annual salary review process) | $6,768.67 | $81,224.00 | US Payroll |
| Housing | - | - | Provided by AECOM |
| **Compensation Total**\*\* | **$6,768.67** | **$81,224.00** | |
| **Deductions** | **Monthly (USD)** | **Annual (USD)** | **Payment Method** |
| Income Tax Withheld \*\*\* | Actual | Actual | Actual Withholding |
| **Estimated Deduction Totals** | Actual | Actual | |

This assignment is not governed by the company's tax equalization policy. You will be subject to income tax withholdings in accordance with your home country withholding regulations. You will retain the rights to any and all foreign income tax credits or exclusions allowable by law.

**Exchange Rate Fluctuations**
AECOM does not accept responsibility or liability for losses, nor does it except to receive benefit from gains, generated by exchange rate fluctuations).

**Immigration**
The Company will cover all costs associated with obtaining the required immigration clearance including fees associated with obtaining passports for you and your accompanying family, when applicable. This may include a medical examination and/or vaccinations in order to satisfy the immigration criteria.

**Payroll and Benefits**
You will remain on your Home Country payroll for the duration of your assignment.

**International health plan**
Medical, dental and vision coverage incurred in the Host Country whilst on assignment, will be provided via an international health, the Cigna Global International Health Plan, for you and your eligible dependents, including your spouse/domestic partner. The international health plan provides medical and dental coverage in the U.S. and internationally and also covers an annual eye exam. Outside of the U.S., you can receive care from any international health care provider, at the U.S. in-network coverage level.

**Housing Assistance**
The Company will provide you with FURNISHED SELF-CONTAINED accommodation. The residential lease will need to be placed in your name. It is suggested to use an "early release" diplomatic clause where the lease duration exceeds 12 months, in the event you need to depart the Host Country before the lease expiry date. Payment of a Bond can be funded by the Company but most be returned in full by the employee on repatriation or when the lease is completed. Any shortfalls from return of the Bond are to be funded by the employee.

**Tax Obligations – Home and Host**
AECOM considers compliance with tax laws and regulations as paramount. It is your responsibility to fulfil your personal tax compliance liability, if any, in both the home and host country.   This assignment is not governed by the company's tax equalization policy.  You will be subject to income tax withholdings in accordance with your home country withholding regulations.  You will retain the rights to any and all foreign income tax credits or exclusions allowable by law.

**Assignment Completion**
Upon completion of your assignment it is anticipated you will return to the home country to rejoin your Home Country business.   Assignment Allowances and Benefits will cease from your assignment completion date.

**Severance**
In the event that on completion of your assignment, there is no role back in the Home Country, severance payments in terms of your home country employment contract will be provided. Severance payments are calculated on your Home Country reference salary only. To the extent you may be eligible for end of service benefits under local laws, said end of service benefits will be offset by any severance pay or pay in lieu of notice for which you may be eligible under AECOM policy.

**Termination**
If it becomes necessary to terminate your employment in the Host Country (e.g., for cause due to gross misconduct), you and your family will not be entitled to receive reimbursement for return airfare to your home country or relocation expenses, unless required by law.  If you voluntarily resign during your assignment within twelve (12) months of the assignment start date (or within 3 months from the assignment completion date) without at least 4 weeks written notice, you may be required to reimburse AECOM the full amount of the relocation expenses, including the cost of return airfare to your home country, relocation expenses including freight, excess baggage, and relocation vendor fees.

**Conduct**
You agree to abide by all local laws, regulations and customs of the Host Country as well as AECOM's Policies as stipulated under your Home Country employment contract.   By signing this agreement, you acknowledge and understand that ignorance of such laws, regulations and customs shall not be an excuse for failure to abide by them.

**Health & Safety**
You shall, at all times, comply with the policies, procedures and other requirements prescribed by the company and/or its clients in relation to health and safety and take all necessary precautions to ensure your safety and the safety of others at the workplace.

Failure to comply with the health and safety standards of the Company, the client, or the Host Country laws may result in disciplinary proceedings up to and including termination of employment.

**Governing Law**
This Agreement comprises the whole of the agreement between you and the company and there are no warranties, representations, conditions or collateral agreements except as set forth in this Agreement.

Where any matter relating to your employment is not specified in this Agreement and to the extent applicable, the labour laws of the Host Country will apply.

The terms and conditions of this Agreement shall at all times be governed by laws of the United States.  Your employment with the Company is "At Will"; thus, your employment can be terminated by

you or the Company at any time, with or without cause or advance notice. This Agreement does not change or alter your "At Will" employment relationship.

**Acceptance**

This Agreement describes the details of your assignment which, along with the International Assignment Policy, represents the entire terms and conditions of your assignment. In case of any conflict between this Agreement and the International Assignment Policy, this Agreement will control over the International Assignment Policy. If this Agreement fails to correctly reflect your understanding of the terms of your assignment please advise as soon as possible, as only the items discussed herein represent your total assignment package.  By signing this agreement you are acknowledging that you have been provided to access the International Assignment Policy. You agree that the terms of your employment with your Home Entity will remain applicable to you throughout your assignment with your Host Entity, except as required by local law.

Please indicate your acceptance of the above by signing below and returning one original to Tam Nguyen, tam.nguyen2@aecom.com

Our employees are our greatest resources—your ideas and professional contributions will be key to our success. We are excited you'll be taking this next step with us on our journey to deliver a better world.

Sincerely,

_____                    _____

Robert Holt
Project Executive

_____                    _____
(Date)

**ACKNOWLEDGED AND AGREED**

I understand and concur with the terms and conditions specified in this agreement.  I also understand the terms of this agreement to be a confidential matter between the company and me.

_____                    _____
Stewart Smith                                        (Date)

Stewart Smith GTMO 10/12/18                                                                 5

**MOBILIZATION INFORMAT**

Email completed form to Global Mob

| INFORMATION ITEMS |
|---|
| **Requestor Name and Contact** |
| **Name:** |
| |
| **Employee Number (if internal):** |
| |
| **Address:** |
| **Street** |
| **Apartment/Unit (if needed)** |
| **City, State, Zip** |
| |
| **Contact Phone:** |
| |
| **Contact Email Address:** |
| |
| **Job Title:** |
| |
| **Project Name:** |
| |
| **Home Region:** |
| |
| **Project number and Task Code (Mandatory):** |
| |
| **Work Site Location (city & country):** |
| |
| **AECOM Host Legal Entity:** |
| |
| **Reports To (AECOM Employee)** |
| **(Name, Title, Employee #) Mandatory for Time Sheets and** |
| **Expense Reports:** |
| |
| **Mobilization Date:** |
| |
| |
| **Assignment Duration (Must be over 60 days for** |
| **assignment):** |
| |
| **Base Hourly Rate:** |
| |
| **Work Week/ Days/ Overtime:** |
| |
| **Exempt or Non Exempt Employee- Mandatory** |
| **Current Group- DCS,  MS,  CS- Mandatory** |
| |
| **Any Additional Information:** |
| |
| **HR Representative Name:** |
| **HR Representative Title:** |
| |
| **Finance Representative Name:** |
| **Finance Representative Title:** |
| |
| **Home signatory for assignment agreement:** |

TION SUMMARY - Guantanemo Bay, Cuba
bility: Tam.Nguyen2@aecom, Anna.Ochoa@aecom.com

| *Enter Information in this Column* |
| --- |
| Susan Glassey |
| Stewart Smith |

unknown

▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊

Main Post Office PO Box 100954

Arlington, VA 22210

703 975 5670

SmithSM4stategov@gmail.com

Site Security Escort

Guantanemo Bay Naval Base Cuba Roofing Project

Morrisville, NC

60574134 / Task Number 1.101

Guantanemo Bay, CUBA

AECOM Construction, Inc. (part of Construction Services)  Paycode A2X

Robert Holt, Project executive

10/15/2018

over 60 days

$34.05  Plus $400 bi-weekly in Per Diem

5 days a week/ 8 hours.

Non _Exempt
CS

will receive 1 rd trip R&R trip home per quarter  (4 per year).  Housing provided onsite by co.

Susan Glassey
Human Resources Director

Kathryn Marcussen

| Travel Sheet | | | | Do not lose or destroy | |
|---|---|---|---|---|---|
| Name of Traveler:<br>SMITH, STEWART NMI | | Seat<br>Assignment:<br>null | Number of<br>Pets: 0 | Showtime is<br>NET: 0345 09 NOV 2018<br>NLT: 0725 09 NOV 2018 | |
| Origin: JACKSONVILLE NAS<br><br>Contact Information:<br>  Not Available | | | Destination: GUANTANAMO BAY NS<br><br>Contact Information:<br>660-6199/6408 (DSN) | | |
| ITINERARY | MISSION<br>BKBPLM30F313 | FROM<br>NIP | TO<br>NBW | DEPART<br>0945 09 NOV 2018 | ARRIVE<br>1145 09 NOV 2018 |

## ABOUT YOUR RESERVATION

1. **Recommended Check-In Time.** Early check-in eliminates last minute rushing to process for your flight. Most passenger terminals begin processing flights a minimum of 6 hours to the scheduled departure. Check with your departure terminal for further information. You must check-in No Later Than (NLT) 2 hours and 20 minutes prior to the scheduled departure. Passengers arriving after the NLT show time risk forfeiting their reservation.

2. **Departure Times.** Passengers are advised to contact the departure terminal 24 hours the night prior to departure to confirm flight times.

3. **Uniform Requirements.** When required to travel in uniform, you must wear the appropriate uniform as prescribed by the Service's uniform regulations and the Foreign Clearance Guide. When allowed to travel in civilian attire, clothing must not be torn, dirty, tattered, etc. For safety purposes, when traveling on AMC organic aircraft, open toe shoes are not allowed.

4. **No Shows.** If you are unable to make your scheduled flight, contact your installation transportation office or the passenger terminal at your departure point.

## ABOUT YOUR BAGGAGE

1. **Baggage Interlining.** Present an onward commercial ticket or the travel sheet upon check-in and request your baggage be checked through to your final destination. **NOTE:** for AEF missions, there is no baggage interlining. You must claim your bags and recheck at the AMC Counter.

2. **Free Baggage Allowance.** Two checked pieces with each piece not over 62 linear inches (length + width + height) and not weighing over 70 pounds each. Each passenger is permitted to hand carry one article, e.g., small luggage, garment bags, back-pack, and one personal item, e.g., cosmetic case, purse, briefcase, small boxes, packages, for storage in the passenger cabin area. The weight of these items will not be considered as part of the passenger's baggage authorization. Hand-carried items will be no larger than 45 linear inches and must fit under the passenger's seat, or in the overhead compartment. Items that are too large will not be accepted for passenger cabin storage and must be checked-in. Approximate dimensions are 9" x 14" x 22" for a total of 45 inches. **NOTE:** Many commercial airlines now restrict the weight of each piece of baggage to 50 pounds which subjects the passenger for potential overweight charges.

3. **Excess Baggage.** Commercial airlines will normally require payment for excess baggage (over 2 checked pieces). If excess baggage is authorized in your orders, keep your receipts and file for reimbursement.

| CO. | FILE | DEPT. | CLOCK | VCHR. NO. | 170 |
|-----|------|-------|-------|-----------|-----|
| A2X | 711304 | 622080 | TS1 | 0000020055 | 1 |

## Earnings Statement

ADP

**AECOM**

*AECOM*
*4840 COX ROAD*
*GLEN ALLEN, VA 23060*

*E̶ EMPLOYER*

| | |
|---|---|
| Period Beginning: | 12/22/2018 |
| Period Ending: | 01/04/2019 |
| Pay Date: | 01/11/2019 |

*START DATE 10/22/18*

Taxable Marital Status:
   Federal:   Single

Exemptions/Allowances:
   Federal:   0,Tax Blocked

**STEWART SMITH** *Non-EXEMPT*
**PO BOX 100954** *EMPLOYEE*
**ARLINGTON  VA  22210**

*YTD AFTER START DATE 10/22/18*

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Regular | 34.0500 | 56.00 | 1,906.80 | 1,906.80 |
| Floating Hol | 34.0500 | 8.00 | 272.40 | 272.40 |
| Holiday | 34.0500 | 16.00 | 544.80 | 544.80 |
| Sustenance | | | 400.00 | 400.00 |
| **Gross Pay** | | | **$3,124.00** | 3,124.00 |

*No FIELD FOR OT UNLIKE SUBSEQUENT*

| Deductions | Statutory | | |
|------------|-----------|---|---|
| | Social Security Tax | -148.09 | 148.09 |
| | Medicare Tax | -34.63 | 34.63 |
| | VA State Income Tax | -120.81 | 120.81 |
| | **Other** | | |
| | Dental | -9.22* | 9.22 |
| | Medical | -715.67* | 715.67 |
| | Optional Life | -23.98 | 23.98 |
| | Vision | -12.83* | 12.83 |
| | **Net Pay** | | **$2,058.77** |
| | Checking1 | -2,058.77 | 2,058.77 |
| | **Net Check** | | **$0.00** |

**\* Excluded from federal taxable wages**

Your federal taxable wages this period are
$2,388.51

| Other Benefits and Information | this period | total to date |
|--------------------------------|-------------|---------------|
| Grp Term Life | 2.23 | 2.23 |
| P T O Balance | | 18.48 |

**Important Notes**
PAYROLL QUESTIONS?  PLEASE  CONTACT  1-800-742-7219

FOR PAYROLL QUESTIONS, PLEASE CONTACT THE
HELPDESK  AT 1-800-742-7219

**Additional Tax Withholding Information**
Taxable  Marital Status:
   VA:    Married
Exemptions/Allowances:
   VA:    0

© 2000 ADP, LLC

---

**AECOM**

AECOM
4840 COX ROAD
GLEN ALLEN, VA 23060

| Advice number: | 00000020055 |
|----------------|-------------|
| Pay date: | 01/11/2019 |

*THIS IS NOT A CHECK*

Deposited  to the account of
STEWART SMITH

| account number | transit ABA | amount |
|----------------|-------------|--------|
| xxxxxxxxx3520 | xxxx xxxx | $2,058.77 |

**NON-NEGOTIABLE**



# Medical Evaluation and Disposition

Naval Hospital Guantanamo Bay, Cuba
USNH-GTMO
FPO AE 09589
757-458-2998 Opt1 7-23333/2221
757-458-3724 (fax)

Patient: _Smith Stuart_     Date: _22 JAN 2019_

Provider: **Bryant Anthony Nieto**
    **LT   MC(FS) USN**     Clinic: _Primary Care Clinic_

X     Patient was evaluated in Primary Care on _22 JAN 2019_

X     May return to full duties/ school on _23 JAN 2019_

_____     Should be restricted from the following activities: _____
for _____ days/weeks.

_____     Should be excused from school/work for _ 1 (days/weeks._

_____     Will require further evaluation/treatment via a routine medical evacuation
based on medical facility limitations at U.S. Naval Hospital Guantanamo
Bay. *It is the patient's responsibility to schedule any off-island
appointments and inform their employer.*

       Evaluation is elective / necessary
       Should be done ASAP / within 2 weeks / at supervisor's discretion
       I estimate this will take _____ days / weeks.

       After evaluation and treatment is complete, the patient;
_____     Must return to our clinic with a narrative summary of their
       Care before returning to work.

_____     May not return to Guantanamo Bay until our clinic has
       completely reviewed a summary of their care. This may be
       faxed to us at the above number.

       **Bryant Anthony Nieto**
       **LT   MC(FS) USN**

          Provider Signature / Stamp

## Naval Hospital Guantanamo Bay
## Primary Care Clinic
### Phone: (757) 458-2998 Option 1. Ext 7-2944

_____ **On-Island Referrals** (Call the number listed to schedule your appointment *or* stop by the front desk)

Mental Health (7-2650)        OB/Gyn (7-2410)        ENT (7-2410)        General Surgery (7-2410)

Physical Therapy (7-2940)     Nutrition (7-2944)     Optometry (7-2250)

Behavioral Health Self-Referral (7-2650) *(i.e. smoking cessation, weight management, stress, sleep, etc.)*

_____ **Visiting Specialist Referrals** (You should receive a call to schedule this appointment 2-3 weeks prior to their scheduled visit. Dates are subject to change. If you have not heard from the scheduler 2 weeks prior please call the number listed *or* send a message through Secure Messaging!)

Dermatology (72-944)     Gastroenterology (7-2410)     Podiatry     (7-2410)     Endocrinology (7-2944)
Neurology     (7-2944)     Ophthalmology     (7-2410)     Ultrasound (7-2210)     Cardiology     (7-2944)
Audiologist     (7-2995)     Echocardiogram     (7-2110)     Urology     (7-2410)     Orthopedics     (7-2410)

\_\_X\_\_ **Off-Island Specialist Referral:** \_\_\_\_Urology\_\_\_\_

(A referral was placed for you to be seen for specialty care off island. The referral manager will contact you in 1-3 business days to assist with scheduling an appointment. If you have not received a call in 3 business days please call **7-2333** or stop by the **Referral Management Office** located in the same hallway as the pharmacy.)

### Other Instructions:

_____

_____

_____

### Sign Up For *Secure Messaging* Today!

Secure Messaging is a *secure* online service that allows you to communicate with your healthcare team!

- **Email your provider** *anytime* and *anywhere* to discuss concerns
- **Request prescription renewals** *(If refills are already available, call 7-2930)*
- **Request appointments** *(NOT for emergencies)*
- **Receive lab and radiology results**

Please stop by the front desk to register, sign-up at home: https://TOLSecureMessaging.com

### Important Numbers

In an EMERGENCY dial *911*

Sexual Assault Hotline → 7-4912/4910

Domestic Violence Advocacy→ 757-458-4915 or 7-4915

Crisis Hotline → 1-800-273-8255

Fleet and Family Services → 9-4141 or 9-4153

*National Nurse Advice Line-available 24/7 →1-800-TRICARE, Option 1*



SEE PAYMENT OPTIONS PAGE FOR ELECTRONIC PAYMENT OPTION

U.S. Department of Defense
Navy Bureau of Medicine and Surgery (BUMED)
Naval Hospital Guantanamo Bay
P.O. Box 970014
St. Louis, MO 63197-0014



## INVOICE
**Centralized Receivables Service**

| | |
|---|---|
| CRS INVOICE NUMBER: | 10912282463 |
| INVOICE DATE: | 04/07/2020 |
| AGENCY REFERENCE: | GT19G0619002258 |

ılıılıııılıllılllılıpılılılıılıılıllıııllılılılpıpı
00006060702 SP 0.560 106481166658962 P
SMITH STEWART
PO BOX 100954
ARLINGTON, VA 22210

| DESCRIPTION | AMOUNT |
|---|---|
| Charges are owed to the Department of Defense (DoD) Military Treatment Facilities (MTFs) for services provided to you or a person under your sponsorship. Per 10 USC 1079b and 32 CFR 108, DoD must bill for the costs of healthcare provided in DoD MTFs.<br><br>SERVICES | $208.93 |
| **TOTAL AMOUNT DUE ON OR BEFORE 6/5/2020** | **$208.93** |

Payment in full is due now. If you have any questions concerning this invoice, contact the Centralized Receivables Service at 1-855-549-2684. The Centralized Receivables Service is a service provided by the U.S. Department of the Treasury to Federal agencies to assist in the management of accounts receivables.

Federal agencies are generally required to assess interest, administrative costs and penalties on past due amounts. Interest accrues at the annual rate of 2% on any amount outstanding from the Invoice Date. Administrative costs include processing and handling of unpaid balances. A penalty will be assessed at the annual rate of 6% on any amount outstanding after 91 days from the Invoice Date. You can avoid assessment of any charges, if we receive payment for the above amount on or before 06/05/2020.

If you fail to pay the full amount within 90 days from the date of this invoice, the Centralized Receivables Service will refer your debt(s) to the U.S. Department of the Treasury's Debt Management Services (DMS) for collection, at which time additional administrative fees of up to 30% will be added to your debt(s). In addition, DMS may take any or all of the following actions:

- Reduce any eligible Federal and State payments due to you.
- Refer your debt(s) to a private collection agency, which could result in increased costs to you.
- Refer your debt(s) to the U.S. Department of Justice to initiate litigation.
- Report the indebtedness to national credit bureaus.
- Report your debt(s) to the IRS as potential income.



**UNIFORM BUSINESS OFFICE**

REPRINT

**USNH GUANTANAMO BAY**
PSC 810 BOX 185, PNT ACTS
FPO AE 095890002
11539972074                                              I&R #:G0615-19-002258
NPI :1518912823                    Tax ID : 680679578                    Date:05/22/2019

Invoice & Receipt

STEWART M SMITH
PSC 1005 BOX 9
FPO AE 09593

Patient IEN :  120821
FMP / Patient Name :  20 / STEWART M SMITH

| Date of Service | Description | Qty | Charges | Payment/ Adjustment Date | Payments/ Adjustments | Running Balance |
|---|---|---|---|---|---|---|
| 01/22/2019 | USNH GUANTANAMO BAY/190615S0003905 Z87442/PERSON HISTORY,URINARY CALCULI 99212-00/OFF/OP VST,EST;PROB HX,MIN,10M | 1 | 44.64 | | | |
| | | | | | | 44.64 |
| 01/22/2019 | USNH GUANTANAMO BAY/190615S0003925 Z23/ENCOUNTER FOR IMMUNIZATION | | | | | |
| | 90715-00/TDAP,ADM TO INDIV >=7YR,IM USE | 1 | 32.27 | | | |
| | 90691-00/TYPHOID VACCINE, IM | 1 | 94.38 | | | |
| | 90472-00/IMMUNIZATION ADMIN;EA ADD VACC | 1 | 12.96 | | | |
| | 90471-00/IMMUNIZATION ADMIN;1 VACCINE | 1 | 21.91 | | | |
| | | | | | | 161.52 |
| 01/22/2019 | USNH GUANTANAMO BAY/190615S0003981 R69/ILLNESS, UNSPECIFIED | | | | | |
| | 81003/LABORATORY - CLINICAL DI | 1 | 2.77 | | | |
| | | | | | | 2.77 |

*Handwritten notes: 01/22/19 HOSPITAL VISIT; URINARY KIDNEY STONE*

Balance Due:                                    $208.93

5/5                                    000060607 02 SP 0.560 106481166658962 P

**Edward P. Curcio, M.D. P.C.**

2251 Pimmit Drive, Suite C-3

Falls Church, VA  22043

(703) 790-9610  ~  Fax (703) 790-5583

October 8, 2010

Dept of Human Services

Dear Sir/Madam:

I am a board certified psychiatrist with over 30 years of experience.  I have recently evaluated Mr. Stewart Smith.  I have given him a diagnosis of Panic Disorder precipitated by feelings of claustrophobia.

Over the past year, Mr. Smith has been able to extend the time that he can tolerate traveling in an airplane.  It is anticipated that with reasonable accommodation he will continue to be able to expand the amount of time that he can travel without symptoms.

I would support any reasonable measures or requirements that Mr. Smith subjectively feels are necessary to negate or minimize this irrational fear of confined spaces.  It is understood that one such countermeasure is not traveling consecutively for great lengths of time; this is not deemed unreasonable.  It is advisable for Mr. Smith to stop or rest when and where possible after lengthy travels to minimize his anxious reactions.

I hope that you will be able to take these factors into consideration.

Sincerely yours,

Edward P. Curcio, M.D.

♥**aetna**™  PO Box 981106
El Paso, TX 79998-1106

200424084429'
'000507'J1XC081'001701'

4-24-2020

DCN# 200424084429

STEWART M SMITH
P.O. BOX 100954
ARLINGTON, VA 22210-3954

Plan Sponsor Name: AECOM
Subscriber Name: STEWART M SMITH
Patient Name: STEWART M SMITH
ID Number: W238006252

Subject: Verification of Eligibility

*AECOM MEDICAL COVER
1 MONTH ONLY
01\01\2019 — 01\31\2019*

Dear Stewart M Smith:

This letter is in response to your request for written confirmation that the above named patient was eligible for medical and prescription insurance coverage. The above named patient became effective with us on 01-01-2019 and was enrolled in an Open Access Managed Choice Preferred plan that terminated on 01-31-2019.

With this type of plan, the patient was not required to select a Primary Care Physician and referrals were not required to see another participating specialist.

This is not a guarantee of payment, only verification of eligibility. The patient must be eligible for coverage on the date services are received. If the subscriber's and/or the dependent's status has changed with the plan sponsor (usually the employer), please contact the plan sponsor because terminations based on eligibility can be retroactive.

Benefit coverage is determined based on the patient's actual eligibility on the date services are rendered and is subject to all plan provisions and exclusions actually in effect on that date. Please refer to your plan documents for further information regarding benefits and exclusions.

Please send all claims to:

Member Services
PO Box 981106
El Paso, TX 79998-1106





# U.S. Dept of State
## Diplomatic Security Training Center
## SSM CST CAG Program





# CERTIFICATE OF TRAINING

Stewart M. Smith

Has successfully completed eight hours of training on
Fundamentals of Blue Print Reading.

Apr 29, 2011

Kenneth Tolley
CAG/CST Instructor

Cassandra Cooke
Branch Chief



# Diplomatic Security Service

*This is to certify that*

**Stewart Michael Smith**

*has Successfully Completed*

**SE501 CAG/CST Fundamentals**

**April 15, 2011 – April 29, 2011**

*conducted by*

**Diplomatic Security Training Center**

David J. Schnorbus
Director, Diplomatic Security Training Center

**COMPLETED AS CST**

NATIONAL FOREIGN AFFAIRS TRAINING CENTER
FOREIGN SERVICE INSTITUTE
U.S. DEPARTMENT OF STATE

This certificate is awarded to

*Stewart Smith*

in recognition of successful completion of

*PE230 – Maritime Policy and International Shipping*

*August 25 – 26, 2008*

Steve Miller
Course Coordinator

Doris Haywood
Course Coordinator



A.Harold+Associates, LLC

I, Frank Meyer can affirm the following statements.  I Frank Meyer was acquainted with Mr. Stewart M. Smith through a shared project at Naval Station Guantanamo Bay years 2018 and 2019.  I have over 20-years military experience plus 10-years construction experience.  My decades of experience, as a Site Security Coordinator on several high profile construction projects combined with the highest level of security clearances qualify me to objectively comment and in doing so possibly support many of Mr. Stewart Smith's claims.  Due to the sensitive nature of this project, I can only confirm Mr. Smith was known to have been an employee of AECOM; and stationed at GITMO-Cuba and remained on an extremely important construction project until his removal in late January 2019.

Mr. Smith and I worked for separate employers on this particular project in Cuba.  Mr. Smith and as well as his position as non-management and in the field responsibilities were known to the U.S. Government down to the subcontractors and laterally to my company.  The field responsibilities brought the two of us on daily contact and nearly hourly contact for almost 10-hours a day, 6-days a week month after month.  My company's primary functions were to observe and evaluate AECOM and its' personnel, which Mr. Smith was known to be a full time employee.  Through my observance, Mr. Smith was for the majority of the time and for weeks on end the main representative of his team and admirably performed his job and daily performed the work of several employees as AECOM was deficient in manpower.  Stewart was regarded by me as a true professional and maintained copes notes.

Mr. Stewart Smith and his AECOM co-worker, Mr. Harold Blake independently confided in me that they were not being paid their overtime.  Mr. Smith's comments were conveyed and received in confidence given my company's position of neutrality on this project as independent observers of contract compliance.  Mr. Smith's concerns over both non-payment of regular paychecks as well as AECOM's reported refusal to honor their employee employment contract overtime continued.  Mr. Smith's work ethic and professionalism are to his credit as he performed his duties in a superior manner and attempted to fill gaps created by non-existent personnel while simply not being paid. , Mr. Smith was visually more present during the months of reported non-payment while his superior, Mr. Blake and manager, Mr. Fleming were seemingly entirely absent from site.

A Saturday meeting was held, according to Mr. Smith, was accused by the AECOM project manager as speaking to NAVFAC, as claimed he never actually spoke to NAVFAC.  I recall and can affirm that Stewart claimed he did not speak with NAVFAC but he did inform representatives of WHS.

In closing, in my professional opinion with 30-years of experience and as an observer and on this project, there were no reasonable explanation for AECOM to dismiss Mr. Stewart Smith given both his good work performance.  AECOM was severely deficient in personnel with Stewart arguably the only representative from AECOM on the project certified and trained to perform and or supervise

Frank Meyer

CST AHA-LLC.com

352-613-3741

STEWART M. SMITH

AECOM-CS

520-2019-02560

## PAST (prior AECOM employment)

**LOSSES**

**[ AECOM  AUSTRALIA  09/2017-03/2018 ]**

**contract guaranteed 42 hrs./wk., minimum**          **-36 hrs./wk., IN REALITY**          **-$5600**

$10,000 contract completion bonus          -LOST BONUS ACCEPTING AECOM GERMAN OPP          (-10,000)

[new job]  offered Germany PM Opp          -GERMANY OPP RESENDED AFTER AUSSIE QUIT NOTICE (-150,000)

**IMMEDIATELY PRIOR TO AECOM  CUBA  [ 08/2018+09/2018+10/2018 ]**          **ACTUAL LOSSES: $5,600**

AECOM acceptance burned bridge with existing employer with no notice          (potential loss: $160,000)

(potential future career loss)

## FUTURE (future with AECOM)

**FUTURE POTENTIAL LOSSES DUE TO SEPERATION  → → → NO CLEARANCE**

inevitable witness fees in sub-contractor, RQC lawsuits

possible witness in NAVFAC lawsuits against AECOM          (potential earnings: $20,000)

**Bad Credit Score +/ possible Foreclosure  [due to 8-months No Wages]**          (potential loss)

**STEWART M. SMITH**

AECOM-CS

520-2019-02560

## BASELINE

| | | | MORTGAGE |
|---|---|---|---|

Regular: $1363 weekly   |   OT added: $2283 weekly

Regular: $5452 monthly   |   OT added: $9132 monthly — $2,000 monthly

Regular: $17,719 13 weeks   |   OT added: $29679 in totality — **$16,000 for: 4 months not paid + 4 months unemployed**

**$26,953 (owed in wages)** — **$45,000 in equity lost in Short Sale/Foreclosure**

$36,528 (while unemployed) — **LOSS OF HOME FOR ENTIRE FAMILY**

$73,056 (remainder of contract) — **Bad Credit Score**

$100,452 (value of contract) — **POTENTIAL LOSS OF SECURITY CLEARANCE**

## REMEDIES

- **Dates of employment: 10/22/2018 – 09/01/2019 :to IRS and/or in writing**
- **Separation cause:  Job Abolishment**
- **Ending Job Title:  Assistant Site Security Manager (A/SSM)**
- **$26,953 paid corrected as employee or 1099**
- Eligible for Re-Hire with No Restrictions as Employee / SUB / Contractor and any AECOM projects, in writing
- Signed Human Resource account of the above of employment dates & re-hire eligible status
- Settlement Offer: $750K  |  $450-$400K  |  $250-$200K  |  $100K  |  no deal

## PROOFS

- ❖ Current AECOM Class Action Lawsuit out of Washington State & Texas for failing to pay overtime
- ✓ affidavits from F. Meyer & S. Tobin
- ○ foreclosure notices
- ✓ **DOD HUMAN/SEX TRAFFICKING**
- ✓ **RECORDINGS OF 12-JAN MEETING  &  21-JAN TERMINATION  &  RIDE TO FERRY WITH M. FLEMING**