UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

STEWART M. SMITH,

                Plaintiff,

- against -

AECOM TISHMAN, ET AL.,

                Defendants.

**ORDER**

21 Civ. 2915 (PGG) (SDA)

---

PAUL G. GARDEPHE, U.S.D.J.:

        Pro se Plaintiff Stewart M. Smith brings this action against Defendants AECOM Tishman and Tishman Construction Corporation (collectively "Tishman"), and Robert Holt, Mark Anthony Fleming, and Harold Blake alleging breach of contract and violations of the Age Discrimination in Employment Act ("ADEA"), the Rehabilitation Act of 1973, the Americans with Disabilities Act ("ADA"), the Trafficking Victims Protection Act ("TVPA"), the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), and the New York Penal Law.  (Cmplt. (Dkt. No. 1) at 1-14)[1]

        On February 22, 2022, Defendants moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Def. Mot. (Dkt. No. 41))  On February 23, 2022, this Court referred Defendants' motion to Magistrate Judge Stewart Aaron for a Report and Recommendation ("R&R") on February 23, 2022.  (Dkt. No. 43)  On June 1, 2022, Judge Aaron issued an R&R recommending that the Defendants' motion to dismiss be granted in part and denied in part.  (See R&R (Dkt. No. 50))  Plaintiff objects to the R&R to the extent that Judge Aaron recommends

---

[1] The page numbers of documents referenced in this Order correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.

that his claims under the TVPA and the New York Penal Law, and for breach of contract, be dismissed.  (Pltf. Obj. (Dkt. No. 51))

For the reasons stated below, Plaintiff's objections will be overruled, and the R&R will be adopted in its entirety.

## BACKGROUND

### I.   FACTS[2]

Smith was hired on October 22, 2018, by Tishman – a U.S. government contractor – to work on a construction project at Guantanamo Bay Naval Base ("Guantanamo"). (R&R (Dkt. No. 50) at 2)  An October 12, 2018 letter agreement between Tishman and Smith that is attached to the Complaint indicates that the position was a "temporary international assignment" and that Smith's employment was at will.  (Id.)  Smith arrived at Guantanamo on November 9, 2018, as part of an "initial overseas deployment of specialized personnel" (the "Deployment"), the members of which were all over 40 years old.  (Id. at 2-3)

Smith suffers from chronic kidney dysfunction which he alleges is a disability.  (Id. at 3)  Prior to accepting the job at Guantanamo, Plaintiff asked Defendants whether he would be required to spend prolonged time in high temperature environments.  Smith alleges that Defendants told him that only 10% of his work would be performed outdoors.  (Id.)  Soon after the Deployment's arrival, one member "departed" and was replaced by a younger and "vastly inexperienced person."  (Id.)  Following the departure of Smith's colleague and the arrival of the

---

[2] The parties have not objected to Judge Aaron's recitation of the alleged facts.  Accordingly, this Court adopts the R&R factual account.  See Silverman v. 3D Total Solutions, Inc., 2020 WL 1285049, at *1 n.1 (S.D.N.Y. Mar. 18, 2020) ("Because the parties have not objected to the R&R's characterization of the background facts . . . , the Court adopts the R&R's 'Background' section and takes the facts characterized therein as true."); Hafford v. Aetna Life Ins. Co., 2017 WL 4083580, at *1 (S.D.N.Y. Sept. 13, 2017) ("The parties do not object to the Magistrate Judge's . . . recitation of the facts of this case, and the Court adopts them in full.").

younger, less experienced worker, Smith was required to work more outside, resulting in increased exposure to the heat and sun. (Id.)

On January 9, 2019, Smith worked a long day without any break. As a result, he was sick on January 10, 2019, and missed work. (Id.) An unnamed member of Tishman's management team asked Smith why he had missed work and made "veiled implications" that he "could lose his job" if he missed work. (Id. at 3-4) Smith was fired on January 21, 2019. (Id. at 4)

## II.   PROCEDURAL HISTORY

On March 17, 2019, Smith completed an Equal Employment Opportunity Commission ("EEOC") intake questionnaire in which he checked off boxes indicating that Defendants terminated his employment based on age and disability discrimination. (EEOC Intake Questionnaire (Dkt. No. 46-1) at 2) On January 5, 2021, the EEOC notified Smith of his right to sue. (Cmplt. (Dkt. No. 1) at 19)

Smith filed the Complaint on April 3, 2021. (Id.) On February 22, 2022, Defendants moved to dismiss. (Def. Mot. (Dkt. No. 41)) This Court referred Defendants' motion to Judge Aaron on February 23, 2022. (Dkt. No. 43) On June 1, 2022, Judge Aaron issued a fourteen-page R&R recommending that Defendants' motion be granted in part and denied in part. (R&R (Dkt. No. 50))

Smith filed objections to the R&R on June 15, 2022. (Pltf. Obj. (Dkt. No. 51)) Defendants filed an opposition on June 29, 2022. (Def. Opp. (Dkt. No. 53))

## DISCUSSION

I.   **LEGAL STANDARDS**

  A.   **Review of a Report and Recommendation**

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). "'The district judge evaluating a magistrate judge's recommendation may adopt those portions of the recommendation, without further review, where no specific objection is made, as long as they are not clearly erroneous.'" Gilmore v. Comm'r of Soc. Sec., No. 09 Civ. 6241 (RMB) (FM), 2011 WL 611826, at *1 (S.D.N.Y. Feb. 18, 2011) (quoting Chimarev v. TD Waterhouse Inv. Servs., 280 F. Supp. 2d 208, 212 (S.D.N.Y. 2003)). A decision is "clearly erroneous" when, "upon review of the entire record, [the court is] left with the definite and firm conviction that a mistake has been committed." United States v. Snow, 462 F.3d 55, 72 (2d Cir. 2006) (quotation marks and citation omitted).

  Where a timely objection has been made to a magistrate judge's recommendation, the district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However, "[o]bjections that are 'merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original [papers] will not suffice to invoke de novo review.'" Phillips v. Reed Grp., Ltd., 955 F. Supp. 2d 201, 211 (S.D.N.Y. 2013) (second alteration in original) (quoting Vega v. Artuz, 97 Civ. 3775 (LTS)(JCF), 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002)). "To the extent . . . that the party . . . simply reiterates the original arguments, [courts] will review the Report strictly for

4

clear error." IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc., 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008) (citing Pearson-Fraser v. Bell Atl., 2003 WL 43367, at *1 (S.D.N.Y. Jan. 6, 2003) and Camardo v. Gen. Motors Hourly-Rate Emp. Pension Plan, 806 F. Supp. 380, 382 (W.D.N.Y. 1992)); see also Ortiz v. Barkley, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) ("Reviewing courts should review a report and recommendation for clear error where objections are merely perfunctory responses, . . . rehashing . . . the same arguments set forth in the original petition." (quotation marks and citations omitted)).

Moreover, a party cannot invoke de novo review by citing new facts or making new arguments that the party could have raised in the briefing before the magistrate judge but did not.  See Bolling v. City of New York, 2021 WL 961758, at *6 (S.D.N.Y. Mar. 15, 2021) ("[D]istrict courts 'will ordinarily refuse to consider evidentiary material that could have been, but was not, presented to the magistrate judge in the first instance.'") (quoting Brown v. Martuscello, 2019 WL 3491461, at *2 (S.D.N.Y. Aug. 1, 2019)); United States v. Gladden, 394 F. Supp. 3d 465, 480 (S.D.N.Y. 2019) (declining to consider a "'new argument[] raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but [was] not.'") (quoting Hubbard v. Kelley, 752 F. Supp. 2d 311, 313 (W.D.N.Y. 2009)).

B.     **Rule 12(b)(6) Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss[,] . . . the court is to accept as true all facts alleged in the complaint," and must "draw all reasonable inferences in favor of the plaintiff." Kassner v. 2nd

Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007). A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Northeast Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to establish entitlement to relief]." Iqbal, 556 U.S. at 678.

In resolving a motion to dismiss, a court may "consider . . . the complaint and any documents attached thereto or incorporated by reference and documents upon which the complaint relies heavily." Bldg. Indus. Elec. Contractors Ass'n v. City of N.Y., 678 F.3d 184, 187 (2d Cir. 2012) (citation and quotation marks omitted).

A "pro se complaint . . . [is] interpret[ed] . . . to raise the 'strongest [claims] that [it] suggest[s].'" Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474-75 (2d Cir. 2006) (per curiam)). "However, although pro se filings are read liberally and must be interpreted 'to raise the strongest arguments that they suggest,' a pro se complaint must still 'plead sufficient facts to state a claim to relief that is plausible on its face.'" Wilder v. U.S. Dep't of Veterans Affairs, 175 F. Supp. 3d 82, 87 (S.D.N.Y. 2016) (citations omitted). Moreover, "the court need not accept as true 'conclusions of law or unwarranted deductions of fact,'" Whitfield v. O'Connell, No. 09 Civ. 1925 (WHP), 2010 WL 1010060, at *4 (S.D.N.Y. Mar. 18, 2010) (quoting First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994)), and "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice,'" even where a plaintiff is proceeding pro se. Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Iqbal, 556 U.S. at 678).

6

## II.     ANALYSIS

### A.     Recommendations to which Smith Has Objected

#### 1.     Trafficking Claims Under the TVPA and the New York Penal Law

Smith asserts labor trafficking claims under the TVPA, Pub. L. No. 106-386, 114 Stat. 1464 (2000), and under New York Penal Law §§ 135.5 and 230.34.  (Cmplt. (Dkt. No. 1) at 6)  Defendants contend that these claims should be dismissed because Smith has not alleged that he was "forced" to work for Defendants.  On the contrary, the Complaint alleges that the parties' employment relationship was "at will."  Defendants further contend that the New York Criminal Law does "not provide a private right of action in civil court."  (Def. Br. (Dkt. No. 42) at 19-21)

As Judge Aaron notes, the TVPA prohibits knowingly obtaining a person's labor or services

> (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
>
> (2) by means of serious harm or threats of serious harm to that person or another person;
>
> (3) by means of the abuse or threatened abuse of law or legal process; or
>
> (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint.

(R&R (Dkt. No. 50) at 11 (quoting 18 U.S.C. § 1589(a)))

Judge Aaron finds that "[n]one of these elements is present here.  Plaintiff was not forced by Defendants to work.  Indeed, Plaintiff did not show up to work on January 10, 2019, because he did not feel well, which purportedly was a factor in his termination.  Plaintiff does not allege that any force was used against him or that he was threatened with physical harm."  (Id.)

As to Plaintiff's claims for trafficking under the Penal Law, Judge Aaron concludes that they are, like Plaintiff's claim under the TVPA, "frivolous":

> Putting aside the fact that there are no plausible allegations that Defendants engaged in conduct violative of these statutes, these are provisions of the New York Penal Law that do not apply outside of New York. See McKinney's Cons. Laws of NY, Book 1, Statutes § 149 ("every statute in general terms is construed as having no extraterritorial effect"). In addition, "[P]laintiff himself does not have standing to compel any law enforcement agency to investigate or prosecute any suspected criminal acts as there is no private right of action to enforce state or federal criminal statutes." Eggsware v. Doe, 2022 WL 827640, at *5 (N.D.N.Y. Feb. 7, 2022), report and recommendation adopted, 2022 WL 823646 (N.D.N.Y. Mar. 18, 2022).

(R&R (Dkt. No. 50) at 11-12)

As to Plaintiff's objections regarding Judge Aaron's recommendations, they are difficult to follow. Plaintiff appears to argue that he has plausibly alleged a claim under both the TVPA and the Penal Law because (1) "Plaintiff was the victim of deception and fraud by Defendants [who induced] . . . his acceptance of Defendants' job in Cuba"; and (2) if the New York Penal law does not apply extraterritorially "Defendants' could willfully hire U.S. citizens . . . for 'foreign soil' projects and not compensate them due to the defense of 'extraterritoria[lity].'" (Pltf. Obj. (Dkt. No. 51) at 5-6)

Smith's objections on these points are "merely perfunctory responses, . . . rehashing . . . the same arguments set forth in the [Complaint]" and in his opposition. (See Cmplt. (Dkt. No. 1) at 12-13; Pltf. Opp. (Dkt. No. 46) at 5-9) Accordingly, these portions of the R&R will be reviewed solely for clear error. See Ortiz, 558 F. Supp. 2d at 451 (quotation marks and citations omitted).[3]

---

[3] Smith also asserts for the first time in his objections that he received his first paycheck on January 11, 2019, "after nearly three[] months of employment[,] . . . [indicating] that Defendants never intended to compensate [their employees] for their labor[.]" (Pltf. Obj. (Dkt. No. 51) at 5) Smith indicates that these new allegations support his trafficking and forced labor claims. (Id.)

8

As to Smith's objection regarding Judge Aaron's recommendation that his TVPA claim be dismissed, this Court agrees with Judge Aaron that the Complaint does not plead any facts suggesting that Smith's work for Defendants was forced labor.  To the contrary, the Complaint's allegations demonstrate that Smith entered into an employment relationship that allowed either side to terminate the employment relationship "at will."

"'[N]ot all bad employer-employee relationships . . . will constitute forced labor . . . . Congress intended to address serious trafficking, or cases where traffickers threaten harm to third persons, restrain their victims without physical violence or injury, or threaten dire consequences by means other than overt violence.'"  See Garnica v. Edwards, 72 F. Supp. 3d 411, 416 (S.D.N.Y. 2014)) (quoting United States v. Dann, 652 F.3d 1160, 1169-70 (9th Cir.2011)).  Smith alleges that he accepted Tishman's job offer at Guantanamo of his own free will and was free to leave at any time.  He has not alleged that Defendants compelled him to work by any use of force, threat of force, threat of legal process, or threat of harm or restraint as required under the TVPA.  Accordingly, Smith has not pled a claim under the TVPA.

As to Judge Aaron's conclusion that the New York Penal Law does not apply "extraterritorially," Smith complains that if applicable labor and trafficking laws do not apply to work conducted overseas, "no U.S. citizen . . . would ever accept an assignment overseas with AECOM.  Thus, employers []such as Defendants would fail to supply necessary labor to [the United States Government]."  (Pltf. Obj. (Dkt. No. 51) at 5-6)  But this argument does not address what is a matter of statutory interpretation.  As Judge Aaron notes, under "New York Law, it is a 'settled rule of statutory interpretation, that unless expressly stated otherwise, no legislation is

---

But because these new allegations "could have been raised before the magistrate but were not,'" this Court will not consider them now.  Gladden, 394 F. Supp. 3d at 480.

presumed to be intended to operate outside the territorial jurisdiction of the state enacting it.'" Rodriguez v. KGA Inc., 155 A.D.3d. 452, 452 (1st Dept. 2017) (quoting Goshen v. Mutual Life Ins. Co. of N.Y., 286 A.D.2d. 229, 230 (1st Dept. 2001) and citing McKinney's Cons. Laws of NY, Book 1, Statutes § 149 ("The laws of one state can have no force and effect in the territorial limits of another jurisdiction, in the absence of the consent of the latter.")).  Here, there is no evidence in the Penal Law provisions cited by Smith that they were intended to apply outside of New York.  Accordingly, Smith's objection has no merit.

Having reviewed this portion of the R&R, and for the reasons stated above, this Court will adopt Judge Aaron's recommendation that the Complaint does not state a claim under either the TVPA or the New York Penal Law.

### 2. Breach of Contract

Plaintiff asserts a claim for breach of contract under Section 2-205 of the Uniform Commercial Code ("UCC").  (Cmplt. (Dkt. No. 1) at 6)  The Complaint does not indicate what contractual provisions Defendants breached.  Defendants argue that this claim should be dismissed because, "on its face, [Section 2-205 of the UCC] applies only to transactions for goods made by a merchant and not to employment contracts."  (Def. Br. (Dkt. No. 42) at 21) Defendants further argue that Smith "fails to identify a contract between himself and Defendants or plead any of the necessary elements for such a claim [under New York law]."  (Id. at 5-6)

Judge Aaron recommends dismissal of this claim because (1) "Article 2 of the UCC deals with the sale of goods and has no application here"; and (2) although "Plaintiff . . . attached to his Complaint an agreement with Tishman[,] . . . he does not allege how that agreement was breached."  (R&R (Dkt. No. 50) at 12)

In his objections, Smith does not contest that the UCC does not apply to his employment contract with Tishman. (See Pltf. Obj. (Dkt. No. 51)) Plaintiff does argue, however, that Defendants breached their agreement with him by (1) "not supplying Plaintiff with full medical coverages from his start date of October 22, 2018 until his termination"; and (2) "not paying Plaintiff in regular installments even though Plaintiff tendered timesheets each and every Friday morning to Defendants' payroll contacts." (Id. at 6) These allegations do not appear in either the Complaint or in Smith's opposition, however, and this Court will not consider allegations which "could have been raised before the magistrate but were not.'" Gladden, 394 F. Supp. 3d at 480.

Accordingly, Smith's breach of contract claim will be dismissed.

  **B.** **Recommendations as to Which No Party Has Objected**

No party has objected to the R&R's recommendation that Defendants' motion to dismiss be (1) granted as to Plaintiff's claims for age discrimination under the ADEA, and age and disability discrimination under the NYSHRL and the NYCHRL; (2) granted as to Smith's ADA claims against the individual Defendants; and (3) denied as to Smith's ADA claims against the corporate Defendants. The Court therefore reviews these recommendations for clear error. See Gilmore, 2011 WL 611826, at *1.

    **1.** **Exhaustion of Administrative Remedies**

Defendants argue that Smith failed to exhaust his administrative remedies, noting that his EEOC charge "is wholly devoid of any discrimination allegations whatsoever, let alone allegations of age [or disability] discrimination." (Def. Br. (Dkt. No. 42) at 10-12, 14-16) In response, Smith has submitted his EEOC intake questionnaire and right to sue letter. (See Dkt. Nos. 46-1, 46-2) Defendants argue that –while the Second Circuit has "not yet ruled on this

11

issue," "numerous other [Circuits] . . . have held that a 'plaintiff cannot be allowed to transfer the allegations mentioned only in the [intake] questionnaire to the charge itself' for the purposes of establishing exhaustion." (Def. Reply. (Dkt. No. 47) at 10 (quoting Barzanty v. Verizon Pa., 361 F. App'x 411, 415 (3d Cir. 2010) (summary order)))

Judge Aaron notes that under both the "ADEA and the ADA, an aggrieved person must file an EEOC charge against a party, and follow the requisite procedures, before bringing suit against that party." (R&R (Dkt. No. 50) at 5-6 (citing Holowecki v. Fed. Exp. Corp., 440 F.3d 558, 562 (2d Cir. 2006), aff'd, 552 U.S. 389 (2008) (ADEA); Curto v. Edmundson, 392 F.3d 502, 503 (2d Cir. 2004) (ADA))) He then addresses EEOC intake questionnaires and how courts in this Circuit have treated such forms for purposes of exhaustion of administrative remedies:

> "An 'Intake Questionnaire' allows an employee to provide the EEOC with basic preliminary information about herself, her employer, and the reason for her claim of discrimination, and begins the process of filing a charge of discrimination." Littlejohn v. City of New York, 795 F.3d 297, 305 n.2 (2d Cir. 2015) (quoting Holowecki v. Fed. Express Corp., 440 F.3d 558, 566-67 (2d Cir. 2006)). "When the Intake Questionnaire manifests intent to have the agency initiate its investigatory processes, the questionnaire can itself constitute a charge of discrimination." Id.
>
> The current version of the EEOC intake questionnaire "require[s] a claimant to clearly express his or her intent by checking one of two boxes, thereby 'forc[ing] claimants to decide whether their questionnaire is a request for the agency to take remedial action . . . or merely a request for further information.'" Lugo-Young v. Courier Network, Inc., 2012 WL 847381, at *6 (E.D.N.Y. Mar. 13, 2012) (quoting Hawthorne v. Vatterott Educ. Ctrs., Inc., 2010 WL 3258560, at *4 (N.D. Okla. 2010)).
>
> "[C]ourts commonly hold that checking Box 2 on the current form of the EEOC's Intake Questionnaire, which authorizes the EEOC to look into the discrimination described in the form and describing that discrimination in detail in the Questionnaire . . . qualifies as a charge with the EEOC for timeliness purposes." Miller v. St. Luke's Roosevelt Hosp. Ctr., 2016 WL 1275066, at *5 (S.D.N.Y. Apr. 1, 2016) (internal quotation marks omitted) (quoting Acheampong v. N.Y.C. Health and Hosps. Corp., 2015 WL 1333242, at *7 (S.D.N.Y. Mar. 25, 2015)).

12

(R&R (Dkt. No. 50) at 6-7)

In recommending that Defendants' motion to dismiss on grounds of exhaustion be denied, Judge Aaron notes that "Plaintiff checked 'Box 2 [on the intake questionnaire,]' indicating: 'I want to file a charge of discrimination and I authorize the EEOC to look into the discrimination I described above.'" (Id. (quoting Intake Questionnaire (Dkt. No. 46-1) at 4)  In connection with the Intake Questionnaire's fourth question, "What is the reason (basis) for your claim of employment discrimination?" Smith checked the boxes that say "age" and "discrimination." (EEOC Intake Questionnaire (Dkt. No. 46-1) at 2)  On the last page of the Intake Questionnaire, Smith also checked the box which states, "I want to file a charge of discrimination and I authorize the EEOC to look into the discrimination I described above." (Id. at 4)  Judge Aaron therefore finds "that the Intake Questionnaire 'manifests intent to have the agency initiate its investigatory processes'" and concludes that the exhaustion requirement has been met. (Id. (quoting Littlejohn, 795 F.3d at 305 n.2))

Having reviewed this portion of the R&R, this Court finds no clear error in Judge Aaron's conclusion that Smith has satisfied the ADEA and ADA's exhaustion requirement.

### 2. Recommendation that Smith's ADEA Claim be Dismissed

Plaintiff alleges that Defendants unlawfully terminated him based on his age, in violation of the ADEA. (Cmplt. (Dkt. No. 1) at 8)  Defendants contend that Plaintiff has not stated a claim under the ADEA because he has not alleged that his "age was the 'but-for' cause of the employer's adverse action." (Def. Br. (Dkt. No. 42) at 12-14 (quoting Pfizenmayer v. Hicksville Pub. Schs, 2017 WL 5468319 (E.D.N.Y. Jan. 24, 2017))

Judge Aaron notes that the ADEA

> makes it unlawful for an employer to "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age," where

13

> that individual is "at least 40 years of age." 29 U.S.C. §§ 623(a)(1), 631(a). A plaintiff alleging an ADEA violation must prove that "age was the 'but-for' cause of the challenged adverse employment action." Gross v. FBL Fin. Sen's., Inc., 557 U.S. 167, 180 (2009).

(R&R (Dkt. No. 50) at 7-8)

In recommending dismissal of Smith's claims for age-related discrimination, Judge Aaron finds that the Complaint

> does not allege that [Smith] was terminated or that his work conditions changed because of his age. Rather, he alleges that he had to work more hours, including hours spent outdoors, because one of his co-workers departed and was replaced by an inexperienced co-worker. Such allegations do not plausibly allege that Plaintiff was discriminated against on the basis of his age.

(Id.) Judge Aaron further notes that while Plaintiff alleges Tishman "confronted him about his absence from work but did not confront his younger co-worker" about a similar absence, "Plaintiff has not plausibly alleged that such disparate treatment was based on age." (Id. at 8, n.8)

Having reviewed this portion of the R&R, this Court finds no clear error in Judge Aaron's conclusion that Smith has failed to plead that his age was the but-for cause of his termination or of any other adverse employment action. Accordingly, Plaintiff's ADEA claim will be dismissed.

### 3. Recommendations as to Plaintiff's ADA Claims

Plaintiff alleges that Defendants unlawfully terminated and retaliated against him on the basis of his disability, and failed to accommodate his disability, in violation of the ADA. (Cmplt. (Dkt. No. 1) at 6-7, 11-13)

Defendants moved to dismiss Smith's ADA claims for failure to exhaust administrative remedies. (Def. Br. (Dkt. No. 42) at 14-16) Judge Aaron finds that Smith exhausted his administrative remedies because, as discussed above, Smith's EEOC Intake Questionnaire "'manifests [an] intent to have the agency initiate its investigatory process'" into

Smith's allegations of disability discrimination. (R&R (Dkt. No. 50) at 7 (quoting Littlejohn, 795 F.3d at 305 n.2)) He therefore recommends that Defendants' motion to dismiss Smith's ADA claims be denied as to the corporate Defendants. (R&R (Dkt. No. 50) at 8)

Judge Aaron recommends, however, that Smith's ADA claims against the individual Defendants be dismissed, because "the ADA does not provide for individual liability." (Id. (citing Nelson v. City of New York, 2013 WL 4437224, at *14 (S.D.N.Y. Aug. 19, 2013) ("It is well established that there is no individual liability under the ADA or the Rehabilitation Act.")))

Having reviewed this portion of the R&R, this Court finds no clear error in Judge Aaron's analysis. Accordingly, Defendants' motion to dismiss Smith's ADA claims will be denied as to the corporate Defendants but granted as to the individual Defendants.

### 4. Recommendation that Plaintiff's Rehabilitation Act, NYSHRL, and NYCHRL Claims be Dismissed

Plaintiff alleges that Defendants discriminated and retaliated against him based on his disability in violation of the Rehabilitation Act, the NYSHRL, and the NYCHRL. (Cmplt. (Dkt. No. 1) at 6, 11) Defendants argue that Smith's claims under these statutes should be dismissed because "by its terms the Rehabilitation Act is not extraterritorial," and because Smith "did not work, live or feel the impact of any alleged discriminatory treatment in New York City or New York State." (Def. Br. (Dkt. No. 42) at 16-19)

Plaintiff argues in his Opposition that all three statutes apply to acts that took place at Guantanamo, because the "base . . . operates under an unusual international agreement with the Republic of Cuba, which authorizes the United States to exercise complete jurisdiction and control" over Guantanamo, such that it is not "foreign soil." (Pltf. Opp. (Dkt. No. 46) at 10-11)

15

Judge Aaron notes that the Rehabilitation Act provides that

> [n]o otherwise qualified individual with a disability in the United States, as defined in section 7(20) [29 USC § 705(20)] shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . ..

(R&R (Dkt. No. 50) at 9 (quoting 29 U.S.C. § 794(a)) (quotation marks and emphasis omitted))

Judge Aaron also notes that "'[t]here is substantial case law . . . holding that the Rehabilitation Act does not have extraterritorial scope.'" (Id. (quoting Murphy v. Eisai, Inc., 503 F. Supp. 3d 207, 216 (D.N.J. 2020))

As to Smith's argument that Guantanamo is not "foreign soil," Judge Aaron concludes that regardless of the degree of control the United States exercises over the base,

> Guantanamo indisputably is located in Cuba and, in Article III of the Lease Agreement, the United States recognizes the "continuance of the ultimate sovereignty of the Republic of Cuba over the [subject] areas. . . ." [Tur v. Nettleton, 2022 WL 1223020, at *4 n.8 (M.D. Fla. Apr. 26, 2022).] Accordingly, the Court finds that Guantanamo is not "in the United States" for purposes of the Rehabilitation Act. See Boumediene v. Bush, 553 U.S. 723, 754 (2008) (Cuba "maintains sovereignty, in the legal and technical sense of the term, over Guantanamo Bay"); see also Colon v. United States, 1982 U.S. Dist. LEXIS 16071, at *6 (S.D.N.Y. Nov. 24, 1982) (holding that Guantanamo is a "foreign country" under the Federal Tort Claims Act).

(Id. at 9-10) Accordingly, Judge Aaron recommends that Smith's Rehabilitation Act claim be dismissed. (Id.) This Court finds no clear error in Judge Aaron's analysis.

Judge Aaron also concludes that the NYSHRL does not apply to conduct outside New York State, and that the NYCHRL does not apply to conduct outside New York City:

> New York State law and the New York City Administrative Code limit the applicability of the NYCHRL to acts occurring within the boundaries of New York City. See N.Y. Gen. Mun. Law § 239-s (1999); N.Y.C. Admin. Code § 2-201 (2003); see also Germano v. Cornell Univ., 2005 WL 2030355 (S.D.N.Y. Aug. 17, 2005) ("To state a claim under the NYCHRL, plaintiff must allege that the defendants intentionally discriminated against them within New York City." (citations omitted)). . . .

16

> To state a claim under the NYSHRL, a non-resident plaintiff must allege that he felt an impact in New York State. See Hoffman v. Parade Publications, 15 N.Y.3d 285, 291 (2010).

(Id. at 10)  Judge Aaron concludes that "because at all relevant times Plaintiff was working in Cuba, and in any event, resides in Virginia," his claims under the NYSHRL and the NYCHRL should be dismissed.  (Id.)  This Court finds no clear error in Judge Aaron's analysis.

Accordingly, Defendants' motion to dismiss Smith's Rehabilitation Act, NYSHRL, and NYCHRL claims will be granted.

### 5. Leave to Amend

As to the standard for leave to amend, Judge Aaron notes that

> "[i]n this circuit, '[i]t is the usual practice upon granting a motion to dismiss to allow to replead.'"  Leneau v. Ponte, 2018 WL 566456, at *18 (S.D.N.Y. Jan. 25, 2018) (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991)).  However, a District Court may deny leave to amend "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."  Holmes v. Grubman, 568 F.3d 329, 334 (2d Cir. 2009).

(R&R (Dkt. No. 50) at 12-13)

Judge Aaron recommends that "since Plaintiff is a pro se litigant[,] . . . he be given leave to amend his ADEA and breach of contract claims."  (Id.)  However, Judge Aaron recommends that leave to amend be denied as to Smith's Rehabilitation Act, NYSHRL, NYCHRL, TVPA, and New York Penal Law claims – as well as his ADA claims against the individual Defendants – because any such amendment would be futile.

This Court agrees with Judge Aaron that it would be futile for Smith to amend his claims under the Rehabilitation Act, the NYSHRL, the NYCHRL, and the New York Penal Law, because those laws do not apply to conduct that takes place in Cuba.  This Court likewise agrees that – given the allegations of the Complaint – Smith cannot plausibly plead facts demonstrating

17

a violation of the TVPA. Finally, as discussed above, the ADA does not provide for individual liability. Accordingly, any amendment as to that claim would be futile.

## CONCLUSION

For the reasons stated above, the R&R is adopted in its entirety. Defendants' motion to dismiss is granted as to Plaintiff's breach of contract claim and his claims under the TVPA, the New York Penal Law, the ADEA, the Rehabilitation Act, the NYSHRL, and the NYCHRL. Defendant's motion is also granted as to Smith's ADA claims against the individual Defendants. Defendants' motion is denied as to Smith's ADA claims against the corporate Defendants. Leave to amend is granted as to Smith's claims for breach of contract and age discrimination under the ADEA. Any motion to file an Amended Complaint is to be filed by **April 28, 2023**. The proposed Amended Complaint is to be attached as an exhibit to the motion to amend.

The Clerk of Court is directed to terminate the motion (Dkt. No. 41), and to mail a copy of this order to pro se Plaintiff.

Dated: New York, New York
       March 30, 2023

SO ORDERED.

*Paul S. Gardephe*
_____
Paul G. Gardephe
United States District Judge