UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

STEWART M. SMITH,

                Plaintiff,

-against-

AECOM TISHMAN and TISHMAN
CONSTRUCTION CORPORATION,

                Defendants.

21-cv-2915 (AS)

OPINION AND ORDER

---

ARUN SUBRAMANIAN, United States District Judge:

    For three months six years ago, *pro se* plaintiff Stewart Smith worked physical security on a construction site in Guantanamo Bay operated by the Tishman Construction Corporation.[1] Smith, who suffers from kidney stones, stayed home sick from work one day. A few days later, Tishman fired him. Smith says that Tishman violated the Americans with Disabilities Act by failing to accommodate his kidney condition and terminating him based on that condition. Smith also says that Tishman breached his employment contract by reclassifying him as an exempt employee and failing to provide him with medical insurance. For the following reasons, summary judgment is GRANTED in Tishman's favor on the ADA claims. The Court declines to exercise supplemental jurisdiction over Smith's state-law breach-of-contract claim.

## BACKGROUND

    In 2011, Stewart Smith met Mark Fleming while working for a government contractor. Dkt. 106 ¶¶ 3–4; Dkt. 94 ¶ 4. Both men shared that they had experienced kidney stone attacks. Dkt. 106 ¶¶ 5–6.

    By 2018, Fleming worked as a Site Security Manager for Tishman on the Guantanamo Bay project. Dkt. 94-2 at 2. In that role, Fleming recommended Smith as his first choice for a Site Security Escort ("SSE"). *Id.* SSEs are responsible for escorting personnel without security clearances to on-site work locations and monitoring those individuals throughout the day. Dkt. 106 ¶ 27.

    Tishman hired Smith as an SSE on October 22, 2018. *Id.* ¶ 16. Fleming authorized Smith to remain in Virginia for two weeks after that date so that Smith could have a medical procedure to treat a kidney stone. *Id.* ¶ 18. After Smith's kidney procedure on November 6, 2018, his doctor confirmed that he was "good to go." Dkt. 92-1 at 226. Smith arrived in Cuba on November 9, 2018. *Id.* at 294.

---

[1] Tishman Construction Corporation does business under the "AECOM" moniker. Dkt. 90 at 1 n.1.

In his new role, Smith reported to Fleming and Harold Blake, who was originally an SSE but was later promoted to Assistant Site Security Manager. Dkt. 106 ¶¶ 30, 32–33. Smith's job was "to remain in the physical presence, or in the line of sight, of any individual [under his charge] on the site who did not have a required security clearance." *Id.* ¶ 28; *see also* Dkt. 92-1 at 135. He was also required to "conduct[] site-wide sweeps for security anomalies or unauthorized persons at the start and end of each day." Dkt. 106 ¶ 29; *see also* Dkt. 92-1 at 280.

Smith says there were immediately "numerous . . . pay issues," including Tishman's failure to pay him overtime. Dkt. 92-1 at 24–26. On November 21, 2018, Tishman's Human Resources Director emailed Smith to let him know that Tishman had reclassified him as an "exempt employee" who "can not claim overtime." Dkt. 92-10. Smith emailed back that he would "elect to consider the proposed adjustment after further discussion." *Id.* On January 1, 2019, he emailed Tishman's finance team, complaining that Tishman owed him overtime and explaining that he was falling behind on his mortgage payments. *See* Dkt. 92-15 at 2.

Meanwhile, Tishman tasked Fleming with developing a Construction Security Plan ("CSP"), which would "prescribe[] the baseline for how the facility on the Project would be constructed," "provide[] for the vetting of the individuals who would work on the Project," and "define[] the roles of the security personnel." Dkt. 106 ¶¶ 37–40.

The CSP was set to take effect on January 10, 2019. Dkt. 94 ¶ 16. Fleming directed Blake to advise the SSEs of the implementation date, *id.* ¶ 17, but Smith says that he was never informed, Dkt. 92-1 at 301.

On January 10, 2019, Smith emailed his supervisors that he was sick and wouldn't be coming to work. Dkt. 106 ¶ 44. He didn't mention a kidney stone. Dkt. 92-6 ("Regrettably, I am calling out sick this morning . . . . I have been tormented by mind and body all night."). He also separately emailed Fleming that he needed to be paid his accrued overtime by the following day or else he would lose his home. Dkt. 92-7. At the time, Fleming thought Smith's call out was due to intestinal issues due to the stress of possibly losing his home. Dkt. 94 ¶¶ 22–23.

That day, Fleming directed Blake to visit Smith at his residence "to check on his medical condition[] and . . . to assist him in completing his time sheet." Dkt. 94 ¶ 24; *see also* Dkt. 92-1 at 310. Blake reported to Fleming that Smith said during this visit that he hoped by calling in, "things would not function" and Tishman would "recognize his value" and "give him all monies he was due." Dkt. 94 ¶ 26; Dkt. 94-1 at 3. (Smith denies that he said this. Dkt. 92-1 at 316–17.) Based on Blake's report, as well as another employee who reported that Smith had asked her "wouldn't it be funny if I called out sick tomorrow?", Fleming "came to believe that Smith called out sick on January 10 in an intentional attempt to sabotage the Project and the CSP rollout." Dkt. 94 ¶¶ 27–28.

On January 11, 2019, Smith returned to work. Dkt. 106 ¶ 54. Blake directed him to go to the trailer and complete his timesheet. *Id.* ¶ 56. In response, Smith left the jobsite and handed his keys to a non-Tishman employee, Frank Meyer. *Id.* ¶ 57; Dkt. 92-1 at 325. Blake reported to Fleming that Smith had told Meyer he was "not coming back [that day] nor was he coming in the following

2

day." Dkt. 94-1 at 3. According to Fleming, "Smith's abandonment of his post was a major security breach" that violated the CSP. Dkt. 94 ¶ 34.

At Fleming's direction, Smith met with Blake and the project manager on January 12, 2019, "to counsel him that this behavior was unacceptable." *Id.* ¶ 37; *see also* Dkt. 106 ¶¶ 66–67. Smith denied wrongdoing. Dkt. 106 ¶ 68; Dkt. 94 ¶ 39. Fleming then fired him, effective January 21, 2019. Dkt. 106 ¶ 70; Dkt. 94 ¶ 40–42. The next day, January 22, 2019, Smith sought treatment for a kidney stone at the Naval Hospital. Dkt. 106 ¶ 71; *see also* Dkt. 92-9; Dkt. 92-1 at 353–55.

On April 3, 2021, Smith sued Tishman and various individuals, alleging violations of the Age Discrimination in Employment Act of 1967, the Rehabilitation Act of 1973, and the Americans with Disabilities Act of 1990, along with various state-law claims. Dkt. 1. After most of the claims were dismissed, Dkt. 55, Smith filed an amended complaint, which alleges that Tishman violated the ADA by (1) failing to provide him with an appropriate accommodation and (2) terminating him because of his disability. Dkt. 64 ¶¶ 42–49. Smith also alleges breach of contract. *Id.* ¶¶ 50–56. At the close of discovery, Tishman moved for summary judgment. Dkt. 88.

## LEGAL STANDARDS

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A material fact is one that would 'affect the outcome of the suit under the governing law,' and a dispute about a genuine issue of material fact occurs if the evidence is such that 'a reasonable [factfinder] could return a verdict for the nonmoving party.'" *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (alteration in original) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "In determining whether there is a genuine issue of material fact, the court must resolve all ambiguities, and draw all inferences, against the moving party." *Id.*

"When a *pro se* litigant is involved, the same standards for summary judgment apply, but 'the *pro se* litigant should be given special latitude in responding to a summary judgment motion.'" *Williams v. Savory*, 87 F. Supp. 3d 437, 451 (S.D.N.Y. 2015) (quoting *Knowles v. N.Y.C. Dep't of Corr.*, 904 F. Supp. 217, 220 (S.D.N.Y. 1995)).

## DISCUSSION

### I. The Court assumes that Smith is covered by the ADA.

To establish a *prima facie* discriminatory discharge or failure-to-accommodate claim under the ADA, Smith must show that "he was disabled within the meaning of the ADA." *Giordano v. City of New York*, 274 F.3d 740, 747 (2d Cir. 2001) (quoting *Heyman v. Queens Vill. Comm. for Mental Health*, 198 F.3d 68, 72 (2d Cir. 1999)); *see also Tafolla v. Heilig*, 80 F.4th 111, 118 (2d Cir. 2023) ("To make out a *prima facie* disability discrimination case based upon a failure to accommodate, a plaintiff must establish," among other things, that he is "a person with a disability under the meaning of the ADA." (citation omitted)). The ADA defines "disability" as a "physical or mental

impairment that substantially limits one or more major life activities," "a record of such an impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(1).

The key language here is "substantially limits." As the Second Circuit has explained, "[n]ot every impairment that affects an individual's major life activities is a *substantially* limiting impairment." *B.C. v. Mount Vernon Sch. Dist.*, 837 F.3d 152, 160 (2d Cir. 2016) (alteration in original) (citation omitted); *see also Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 870 (2d Cir. 1998) ("[I]n assessing whether a plaintiff has a disability, courts have been careful to distinguish impairments which merely *affect* major life activities from those that *substantially limit* those activities.").

Smith testified in his deposition that he has "kidney d[y]sfunction," which "manifests itself most readily with kidney stones." Dkt. 92-1 at 160. As Smith explained, some of his kidney stones are asymptomatic, and those that are symptomatic can result in a range of symptoms, from "a twinge" to a "soreness" that lasts for days or weeks. *Id.* at 165–66, 168. Kidney stone "attacks," however, are usually more severe and sometimes require Smith to seek medical intervention for pain management or help passing the stone. *Id.* at 168, 172–73. Smith's condition requires him to stay constantly aware of his hydration levels, diet, and access to restrooms. *Id.* at 161–62.

The Court doubts that Smith's condition qualifies as a disability under the ADA. Smith has produced no evidence, for example, that his "kidneys would [have] cease[d] to function without mechanical assistance," or that his kidneys required "regular dialysis" to sufficiently "rid [his] bod[y] of waste matter," during the time that he worked at Tishman. *See Gilbert v. Frank*, 949 F.2d 637, 641 (2d Cir. 1991); *see also Earl v. Good Samaritan Hosp. of Suffern NY*, 2023 WL 8708417, at *2 (2d Cir. Dec. 18, 2023) (holding that plaintiff failed to adequately allege that his chronic kidney disease constituted a disability under the ADA because he didn't allege that his kidneys needed "mechanical assistance" or "regular dialysis" to function (quoting *Gilbert*, 949 F.2d at 641)). To the contrary, Smith testified in his deposition that he has never had dialysis or other mechanical assistance. Dkt. 92-1 at 171–72, 176.

Nonetheless, the Court need not reach this issue because even assuming that Smith is disabled within the meaning of the ADA, Tishman is still entitled to summary judgment. Accordingly, for the purposes of this motion, the Court assumes that Smith is covered by the ADA.

## II. Smith can't establish pretext.

Under the ADA, once a plaintiff establishes a *prima facie* case of discrimination, "the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the discharge; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." *Cortes v. MTA N.Y.C. Transit*, 802 F.3d 226, 231 (2d Cir. 2015) (quoting *Sista*, 445 F.3d at 169). Tishman says that it fired Smith for "insubordination, failure to follow instructions, and failure to meet performance expectations," Dkt. 94 ¶ 41, which are legitimate reasons for terminating an employee. *See Matima v. Celli*, 228 F.3d 68, 79 (2d Cir. 2000) ("We have held generally that insubordination and conduct that disrupts the workplace are 'legitimate reasons for firing an employee.'" (quoting *Holt v. KMI-Continental, Inc.*, 95 F.3d 123,

130 (2d Cir. 1996))). Tishman argues that Smith's discharge claim fails as a matter of law because no reasonable juror could find that these reasons for firing him were pretextual.

The Court agrees. Although Smith insists that his insubordination wasn't the real reason for his termination, he points to no evidence from which a reasonable juror could infer a causal relationship between his kidney condition and his termination. The undisputed record evidence shows that Fleming hired Smith knowing of his kidney condition and allowed Smith to spend an extra two weeks in Virginia for a kidney procedure before he arrived at Guantanamo Bay. This was just a few months before his termination. Although Smith says that he was fired for staying home with kidney stones on January 10, 2019, there is no evidence that Fleming knew he suffered a kidney stone attack that day. Smith's out-sick email didn't mention it. *See* Dkt. 92-6. Fleming submitted an affidavit explaining that he initially "understood [Smith's] call out was due to intestinal issues" and later "came to believe that Smith called out sick . . . in an intentional attempt to sabotage the Project and the CSP rollout." Dkt. 94 ¶¶ 22, 28. Smith doesn't contradict this evidence by saying, for example, that he told Fleming that a kidney stone attack kept him home. *See* Dkt. 106 ¶ 45.

Instead, Smith argues that Tishman's reasons for firing him must be pretextual because "[t]here is no other explanation" for it, given that Tishman needed Smith's expertise and experience. Dkt. 105 at 10. But there *is* another explanation: Smith's breach of protocol and his purported efforts to "sabotage" the CSP rollout.

Next, Smith says that if his abandonment of his post was an issue, Tishman was required to report it to the federal government, which would have revoked his security clearances or imprisoned him. *Id.* at 10. Tishman explains that it *did* report Smith's misconduct, but the government "took no disciplinary action because [Smith] had already been terminated . . . and therefore was no longer a security threat." Dkt. 109 at 2; Dkt. 112 ¶¶ 3–5.

Finally, Smith says that it wasn't really a security risk to toss the keys to Meyer or to leave his post, given that Meyer had a security clearance. Fleming explains that "although Meyer may have had some level of clearance to access the Project site, he did not have access to the classified areas to which the *keys* at issue would have granted him access," so handing him the keys was a "security violation." Dkt. 94 ¶ 35. Although Smith may disagree with this assessment, "the mere fact that an employee disagrees with an employer's evaluation of [his] misconduct or deficient performance, or even has evidence that the decision was objectively incorrect, does not necessarily demonstrate, by itself, that the employer's proffered reasons are a pretext for termination." *Kalra v. HSBC Bank USA, N.A.*, 567 F. Supp. 2d 385, 397 (E.D.N.Y. 2008).

In sum, Smith fails to create a triable issue of fact as to whether Tishman's reason for firing him was pretextual, so Tishman is entitled to summary judgment on Smith's discharge claim.

### III.    Smith fails to identify a reasonable accommodation.

As the Second Circuit has explained, "[t]he ADA . . . require[s] an employer to provide a reasonable accommodation for an employee's disability unless the accommodation would impose

5

an undue hardship on the employer." *Tafolla*, 80 F.4th at 118. "[Smith] bears the burdens of both production and persuasion as to the existence of some accommodation that would allow [him] to perform the essential function of [his] employment . . . ." *McBride v. BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92, 97 (2d Cir. 2009).

Smith fails to carry that burden. Although "[t]he reasonableness of an . . . accommodation is a 'fact-specific' question that often must be resolved by a factfinder," *Brooklyn Ctr. for Psychotherapy, Inc. v. Phila. Indem. Ins. Co.*, 955 F.3d 305, 312 (2d Cir. 2020) (alteration in original) (quoting *Noll v. Int'l Bus. Machines Corp.*, 787 F.3d 89, 94 (2d Cir. 2015)), "[a] reasonable accommodation can never involve the elimination of an essential function of a job." *Shannon v. N.Y.C. Transit Auth.*, 332 F.3d 95, 100 (2d Cir. 2003). Smith's proposed accommodation does.

Ordinarily, "[t]o determine a position's 'essential functions,'" courts "conduct[] a fact-specific inquiry into both the employer's description of a job and how the job is actually performed in practice, . . . draw[ing] all inferences in favor of the non-moving party." *Tafolla*, 80 F.4th at 119 (quoting *McMillan v. City of New York*, 711 F.3d 120, 126 (2d Cir. 2013)). That's not necessary here because there's no dispute that *the* essential function of an SSE is "physically escort[ing] and personally or visually monitor[ing] the movement and activities of uncleared personnel." *See* Dkt. 105 at 25 (Smith explaining that this was his "primary duty").

To accommodate his kidney condition, Smith says that Tishman should have allowed him to spend ten percent of his workday outside and the rest inside an air-conditioned trailer—an accommodation that Fleming purportedly promised him. *See* Dkt. 64 ¶¶ 25, 27; Dkt. 105 at 40–41. (Fleming says otherwise. Dkt. 94 ¶ 6.) Tishman says that "[i]t would not have been possible for Smith to have performed his responsibilities as an SSE from the indoors," *id.* ¶ 8, and Smith doesn't dispute this. He doesn't say, for example, that he could monitor personnel remotely from the trailer. Smith just says that the accommodation is reasonable because Blake was allowed to "remain off-site and in an air-conditioned trailer" after he was promoted to Assistant Site Security Manager. Dkt. 105 at 40. But Blake didn't have the same job as Smith, so this doesn't help. He also points out that on a previous AECOM assignment in Australia, he was "inside greater than 90% of his workday." *Id.* But Smith doesn't say that the circumstances of the Australia job were the same or that it involved the same essential functions, so his accommodations there don't get him far.

As Smith tells it, he had to spend more and more of his day outside as the SSE team dwindled. To the extent Smith argues that Tishman should have hired more SSEs as an accommodation, this would not be reasonable either. *See Edwards v. Elmhurst Hosp. Ctr.*, 2010 WL 11623370, at *7 (E.D.N.Y. Sept. 21, 2010) ("[C]ourts have repeatedly held that an employer is not required to hire additional employees to accommodate an individual with a disability.").

Additionally, in his summary-judgment opposition brief, Smith says that Tishman "failed to provide him with the basic health and safety needs of water breaks; . . . cooling-off breaks; . . . meal or rest breaks; and . . . bathroom breaks." Dkt. 105 at 11. The Court understands these

allegations to be part-and-parcel of Smith's claim that he should have been permitted to spend most of his day indoors. *See id.* at 9 ("Defendants . . . failed to honor [Smith's] previously expressed and agreed to reasonable accommodation of not being exposed more than 10% in violation of the ADA by intentionally exposing [Smith] to extreme sun and heat of over 90% as well as denying him water breaks and cooling-off breaks."). But to the extent Smith argues that he was denied bathroom, water, cooling-off, and meal breaks, *see id.* at 40, there's no evidence of that in the record. *See Espinoza v. N.Y.C. Dep't of Transp.*, 304 F. Supp. 3d 374, 383 (S.D.N.Y. 2018) ("[A] pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." (alteration in original) (quoting *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995))). Smith merely testified at his deposition that he was often too busy to take breaks because he was "the only person in the field." *See* Dkt. 92-1 at 436. Moreover, it would be improper to consider these eleventh-hour assertions. The complaint explicitly identifies the "accommodation [Smith] had requested and was promised" as spending "less than 10% of his time outside." Dkt. 64 ¶ 25. "[I]t is well established that '[a] complaint cannot be amended merely by raising new facts and theories in [a plaintiff's] opposition papers,'" even when the plaintiff is *pro se*. *See Green v. N.Y.C. Transit Auth.*, 2020 WL 5632743, at *2 n.2 (S.D.N.Y. Sept. 21, 2020) (second and third alterations in original) (quoting *Southwick Clothing LLC v. GFT (USA) Corp.*, 2004 WL 2914093, at *6 (S.D.N.Y. Dec. 15, 2004)).

Accordingly, Smith fails "to raise a triable issue of fact as to the reasonableness" of his proposed accommodation. *See Gronne v. Apple Bank For Sav.*, 1 F. App'x 64, 67 (2d Cir. 2001) ("Summary judgment is . . . appropriate where a plaintiff fails to identify a facially reasonable accommodation that the defendant refused to provide . . . .").

### IV. The Court declines to exercise supplemental jurisdiction over Smith's state-law claim.

Having granted summary judgment in Tishman's favor on the federal-law claims, Tishman urges this Court to decline to exercise jurisdiction over Smith's state-law claim. Smith takes no position on this issue, other than to say that Tishman isn't entitled to summary judgment on the federal-law claims.[2]

Under 28 U.S.C. § 1367(c)(3), a district court "may decline to exercise supplemental jurisdiction" if it has "dismissed all claims over which it has original jurisdiction." To determine whether to exercise that discretion, courts consider "the familiar factors of judicial economy, convenience, fairness, and comity." *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 81 (2d Cir. 2018). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-

---

[2] Smith's complaint premises jurisdiction on 28 U.S.C. § 1331. Dkt. 64 ¶ 4. He doesn't say that this Court has subject-matter jurisdiction over his contract claim under 28 U.S.C. § 1332, so the Court doesn't consider this as a basis for jurisdiction. *See Behrens v. JPMorgan Chase Bank, N.A.*, 96 F.4th 202, 206–07 (2d Cir. 2024) ("[W]hile federal courts must ensure that they do not *lack* subject-matter jurisdiction, . . . there is no corresponding obligation to *find and exercise* subject-matter jurisdiction on a basis not raised by the parties. Accordingly, a party forfeits the invocation of subject-matter jurisdiction when it fails to timely raise it.").

law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). But the "district court must still meaningfully balance the supplemental jurisdiction factors." *Catzin*, 899 F.3d at 86.

First, as to judicial economy, "[c]ourts consider their familiarity with the facts, the timing of the case, the number of parties and claims, the amount of discovery, and whether there is ongoing parallel litigation." *Chenensky v. N.Y. Life Ins. Co.*, 942 F. Supp. 2d 388, 392 (S.D.N.Y. 2013). Here, this factor cuts both ways. This case has been pending since 2021 and discovery has closed, so this case is advanced, and the Court is familiar with the facts. At the same time, the case hasn't advanced to the scheduling of a final pretrial conference or trial. *Compare Brannon v. Delta Airlines, Inc.*, 434 F. Supp. 3d 124, 141 (S.D.N.Y. 2020) (noting that "[w]hen a plaintiff's federal claims are dismissed before trial, including on a motion for summary judgment, it is often appropriate to dismiss the state claims as well," and citing supporting Second Circuit cases) *and Espinoza*, 304 F. Supp. 3d at 391 (dismissing *pro se* plaintiff's city-law claims after granting summary judgment to defendants on federal-law claim) *with Catzin*, 899 F.3d at 86 (holding that district court abused its discretion by *sua sponte* dismissing straightforward wage claims one week before trial). And although there's technically only one state-law claim left, Smith's breach-of-contract claim is premised on various subclaims, namely that Tishman breached the contract by (1) reclassifying him as an exempt employee, (2) failing to pay him sufficient overtime and per diem payments, and (3) failing to provide health insurance or, in the alternative, providing Smith with health insurance through a different provider than the contract promised.

"Relatedly," the contract claim is not "'easily resolvable,' such that it would be more convenient for this Court to 'resolve the case than decline to exercise jurisdiction.'" *UBS Sec. LLC v. Dondero*, 705 F. Supp. 3d 156, 169 (S.D.N.Y. 2023) (quoting *Chenensky*, 942 F. Supp. 2d at 392). Tishman insists that it was free to unilaterally modify the terms of Smith's employment given that he was an at-will employee. *See Drummond v. Akselrad*, 2023 WL 3173780, at *5 (S.D.N.Y. May 1, 2023) ("[W]hen parties have an employment contract terminable at will, the contract can be modified and different compensation rates fixed without approval of the other party since the dissatisfied party has a right to leave his employment." (quoting *Arakelian v. Omnicare, Inc.*, 735 F. Supp. 2d 22, 32–33 (S.D.N.Y. 2010))). But it's not clear that New York law[3] is settled on this issue. *See Dreyfuss v. eTelecare Glob. Sols.-US, Inc.*, 2010 WL 4058143, at *4 (S.D.N.Y. Sept. 30, 2010) ("[A]n at-will employee can prevail on a breach of contract claim against his employer arising out of an employment agreement."); *see also, e.g., Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339 (2d Cir. 2000) ("Under New York law, an employer's virtually unfettered power to terminate an at-will employee does not negate its duty to abide by promises made prior to termination.").

---

[3] The contract provides only that its "terms and conditions" are "governed by [the] laws of the United States." Dkt. 92-3 at 5. Smith presumes that New York law governs the contract, *see* Dkt. 96 at 2–4, and Tishman argues that it's entitled to summary judgment on the breach-of-contract claim under New York or Virginia law, which don't differ in any material way. *See* Dkt. 90 at 18–19, 21.

Nor does Tishman address a line in the contract that might be understood to cabin the parties' rights to change their deal, providing that Smith agrees that "the terms of [Smith's] employment with [his] Home Entity" as laid out in the contract "will remain applicable to [him] throughout [his] assignment with [his] Host Entity, except as required by local law." *See* Dkt. 92-3 at 6. And if that weren't enough, there are also some murky fact issues. For instance, Tishman insists that while it reclassified Smith as exempt during his employment, after he was terminated it decided to voluntarily pay him for his overtime anyway. Smith responds that he wasn't paid enough, but it's unclear what the difference is and how Smith gets there. The Court would need further briefing to address these issues, which reinforces that declining jurisdiction is appropriate.

The fairness factor "involves questions of equity: Will declining jurisdiction prejudice the parties, and are the parties responsible for any such prejudice?" *Chenensky*, 942 F. Supp. 2d at 392. Neither party offers any reason why dismissal would prejudice them, nor can the Court see one. "Under New York law, the six-year limitations period on claims for breach of contract generally runs from the time the contract was breached." *Lehman XS Tr., Series. 2006-4N, ex rel. U.S. Bank Nat'l Ass'n v. Greenpoint Mortg. Funding Inc.*, 643 F. App'x 14, 16 (2d Cir. 2016). But "[w]hen a state law claim first asserted under supplemental jurisdiction is subsequently dismissed by the court, [28 U.S.C. § 1367(d)] provides that, '[t]he period of limitations for any claim asserted under subsection (a) . . . shall be tolled . . . for a period of 30 days after it is dismissed.'" *Vincent v. Money Store*, 915 F. Supp. 2d 553, 560 (S.D.N.Y. 2013) (third alteration in original) (quoting 28 U.S.C. § 1367(d)). In other words, filing this suit stopped the clock. *See Artis v. District of Columbia*, 583 U.S. 71, 74–75 (2018). Accordingly, Smith will be able to refile his contract claim in state court should he wish to do so, with pre-judgment interest continuing to run until the claim is finally resolved.

As for comity, declining jurisdiction "reflects a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in separate ways." *Chenensky*, 942 F. Supp. 2d at 395 (quoting *Levin v. Com. Energy Inc.*, 560 U.S. 413, 421 (2010)). This factor weighs most strongly against retaining jurisdiction when the supplemental claim raises novel issues of state law. *See id.* Although Smith brings a standard contract claim, as discussed above, it does raise questions about the extent to which employers can unilaterally alter the terms of an at-will employee's contract under state law. And the "relationship between the state and federal claims" also factors into the Court's comity analysis. *Id.* Here, there is no relationship between the state and federal claims, which weighs in favor of dismissal. *See Mitchell v. Metro. Transit Auth. Cap. Constr. Corp.*, 2018 WL 3442895, at *17 (S.D.N.Y. July 17, 2018) ("The Court's concern about comity is much stronger as to Plaintiffs' [city-law] claims, which are analyzed under a markedly different standard from their federal- and state-law claims.").

Accordingly, the balance of factors weighs in favor of declining jurisdiction over Smith's state-law claim.

V. **Leave to amend the complaint is denied.**

Finally, Smith raises in his summary-judgment briefing the Fair Labor Standards Act and the New York Labor Law, neither of which appears in his amended complaint. *See* Dkt. 105 at 32–34, 43–45. To the extent Smith seeks leave to amend his complaint to add these claims, the motion is denied as "untimely and dilatory." *See Jonas v. Int'l Airline Emps. F.C.U.*, 2006 WL 1409721, at *5 (S.D.N.Y. May 19, 2006) (rejecting *pro se* plaintiff's attempt to add new claims in response to defendant's motion for summary judgment); *see also Beckman v. U.S. Postal Serv.*, 79 F. Supp. 2d 394, 408 (S.D.N.Y. 2000) ("Leave to amend a complaint will generally be denied when the motion to amend is filed solely in an attempt to prevent the Court from granting a motion for summary judgment, particularly when the new claim could have been raised earlier." (cleaned up) (citation omitted)). The Court will not permit attempts to "concoct[]" new theories "simply to avoid" a meritorious summary-judgment motion. *Beckman*, 79 F. Supp. 2d at 408–09.

In any event, these claims are meritless. "[T]he NYLL does not apply to work performed outside of New York, even where all the parties are New York employees." *Li v. SMJ Constr. Inc.*, 2022 WL 4463225, at *3 (S.D.N.Y. Sept. 26, 2022) (quoting *Drozd v. U.S.A. Concepts of N.Y. Corp.*, 2015 WL 13733713, at *11 (E.D.N.Y. Apr. 23, 2015)). And the FLSA doesn't apply

> to any employee whose services during the workweek are performed in a workplace within a foreign country or within territory under the jurisdiction of the United States other than the following: a State of the United States; the District of Columbia; Puerto Rico; the Virgin Islands; outer Continental Shelf lands defined in the Outer Continental Shelf Lands Act (ch. 345, 67 Stat. 462); American Samoa; Guam; Wake Island; Eniwetok Atoll; Kwajalein Atoll; and Johnston Island.

29 U.S.C. § 213(f); *see also Risinger v. SOC LLC*, 936 F. Supp. 2d 1235, 1255 (D. Nev. 2013) ("Application of the FLSA [to a military installation in a foreign country] would directly undermine the purpose of the foreign workplace exemption[].").[4]

---

[4] Smith also requests in the alternative that the Court "withhold decision on the motion for summary judgment . . . and grant [Smith] the opportunity to specifically respond to any deficiencies in his response, or . . . grant [Smith] opportunity for further discovery to determine specific details . . . in regards to [Tishman's] accusations of abandonment of post, breach of security, insubordination, and sabotage." Dkt. 105 at 1. These requests are denied. This case has been pending for nearly four years, and Smith had eight months to conduct discovery. *See* Dkts. 69, 83. But Smith will have an opportunity to seek further discovery and file additional briefing related to his contract claim in state court.

## CONCLUSION

Tishman's motion for summary judgment is GRANTED with respect to the ADA claims. Smith's contract claim is dismissed without prejudice. All pending motions are moot.

The Clerk of Court is directed to terminate Dkt. 88 and close this case.

SO ORDERED.

Dated: March 4, 2025
New York, New York

ARUN SUBRAMANIAN
United States District Judge